(50 South. 452.)

No. 17,445.

BYRD et al. v. PIERCE et al.

(June 23, 1909.  Rehearing Denied Oct. 18, 1909.)

1. DESCENT AND DISTRIBUTION (§ 69*)—SIMULATED ACTS OF SALE.

Where, as consideration for acts of sale from a man to certain of his heirs, the grantees assumed a mortgage for $2,000 against the grantor, paid the heirs of his wife sums due them, under a compromise in a suit by them against the grantor to obtain shares of the community property, paid the costs of suit, attorney's fees, a large amount of debts due from the grantor, and assumed the obligation, with which they complied, of supporting him during his life, the acts of sale were not simulations.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212;  Dec. Dig. § 69.*]

2. DESCENT AND DISTRIBUTION (§ 90*)—CONVEYANCES IN FRAUD OF HEIRS—EVIDENCE—DONATIONS.

Acts 1884, p. 12, No. 5, amending Rev. Civ. Code, art. 2239, providing that counter letters can have no effect against creditors or bona fide purchasers, but are valid as to all others, by adding the provision that forced heirs shall have the same right to annul by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate, relates to the character of evidence which forced heirs may offer to support a charge of simulation, but does not change the burden upon them regarding presumptions and proof, and does not affect Rev. Civ. Code, art. 2444, providing that the sales of immovable property, made by parents to their children, may be attacked by the forced heirs as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price

was below one-fourth of the real value at the time of the sale.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 351;  Dec. Dig. § 90;* Fraudulent Conveyances, Cent. Dig. § 528.]

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; M. W. Ott, Judge ad hoc.

Action by Rosa Byrd and others against Luzene P. Pierce and another, in which Olivia Pierce and another intervened. Judgment for defendants, and plaintiffs appeal. Affirmed.

Miller & McDougall and Gayer & Talley, for appellants.  P. B. Carter and Ellis & White, for appellees.

NICHOLLS, J.  The plaintiffs describe themselves as being the forced heirs of James Pierce, deceased. They allege: That James Pierce died on or about the 21st day of August, 1905, leaving as heirs petitioners and Olivia Pierce, wife of David Richardson, Burnette Pierce, wife of J. Leon Pounds, Ellen Wood, wife of Delos Wood, and Luzene Pierce, residents of Washington parish, La.

That prior to his death said James Pierce was the owner of the lands hereinafter described and of other lands in St. Tammany and Washington parishes, and of a large amount of movable property situated in said parishes. That said Luzene P. Pierce, son of said James Pierce, applied to the district court for St. Tammany parish, for administration upon the succession of said James Pierce, and was by said court appointed administrator of said succession.

That said Luzene P. Pierce procured to be made an inventory of the estate of said James Pierce, showing that the only property belonging to said succession was a few dollars in money, a few head of hogs, and one or two promissory notes, amounting in all to about the sum of $250; the said Luzene P. Pierce well knowing that all the lands and property hereinafter described be-

longed to the said succession of said James Pierce and should have been included in the inventory thereof. And petitioners allege that before his death said James Pierce colluded and conspired with the said Luzene P. Pierce and with J. Leon Pounds, husband of said Burnette Pierce, to deprive petitioners of their rights and interest in his property and succession, and to that end and for that purpose said James Pierce made and executed to said Luzene P. Pierce and to said J. Leon Pounds simulated and fraudulent conveyances of his real estate and other property as hereinafter set forth.

That on the 21st day of February, 1903, said James Pierce executed a pretended act of sale and conveyance to said J. Leon Pounds and Luzene P. Pierce, purporting to convey to them the following lands in St. Tammany parish, La., to wit:

(1) The S. W. ¼ of the S. E. ¼ of section 27 and the W. ½ and the S. E. ¼ and lots 1 and 2, of section 34, in township 4 S., range 13 E., and the John Mizell headright, No. 43, and the S. W. ¼ of section 27, being partly in St. Tammany parish and partly in Washington parish, and the Jesse Lee headright, No. 48, less 170.28 acres previously sold; all being in township 4 S., range 13 E., St. Helena meridian.

(2) Jesse Lee headright, No. 40, and 100 acres, being the north end, of section 1, one undivided half of 400 acres of land off the east side of Mahlen Holden headright, No. 56; one undivided half of 130.70 acres off the south end of Cornelius Cooper headright, No. 38, in township 5 S., range 13 E., containing in all 2,222.10 acres.

Also 200 head of stock cattle branded "77," marked upper square in one ear and under square in other, ranging in the vicinity of Red Bluff, on Pearl river, St. Tammany parish, La. The said sale including all the improvements on said lands. That it is stated in said deed that the same was made for a consideration of $6,000 cash in hand paid, as by said pretended act of sale recorded in St. Tammany parish, La., in Conveyance Book 39, page 327, will more fully appear.

That on the same day said James Pierce made and executed a pretended act of sale to said J. Leon Pounds and Luzene P. Pierce, by which he pretended to convey to them for a pretended consideration of $2,000 the following described lands in Washington parish, La., to wit:

(1) Burril Perry headright, No. 49, in township 4 S., range 13 E., containing 401.50 acres.

(2) East ½ of N. E. ¼ and the N. E. ¼ of the S. E. ¼ of section 15; S. W. ¼ of the N. W. ¼ and W. ½ of the S. W. ¼ of section 14; lot 4, or the N. W. ¼ of the N. W. ¼ of fractional section No. 23; S. E. ¼ of the N. W. ¼ and the N. E. ¼ of the S. W. ¼ of section 14; and the N. W. ¼ of the S. E. ¼ and lot 3 of section 27, in township 4 S., range 13 E., containing 834 acres, as by said pretended act of sale recorded in the conveyance office of Washington parish, La., in Conveyance Book 8, page 507, will more fully appear.

That on the 30th day of July, 1904, said James Pierce made and executed a pretended act of sale to said J. Leon Pounds and Luzene P. Pierce for an alleged consideration of $300, purporting to convey to them 200 acres of land, situated in the southwest corner of the Francis Passon headright, No. 45, township 3 S., range 10 E., as by said pretended act of sale, recorded in Conveyance Book No. 9, page 588, of the conveyance records of Washington parish, will more fully appear.

That on the 19th day of July, 1905, said James Pierce made and executed to said Luzene P. Pierce a pretended act of sale, for an alleged consideration of $320 cash, purporting to convey the W. ½ of the S. E. ¼ of section 7 and the N. ½ of the N. E. ¼, section

18, township 5 S., range 14 E., containing 160 acres of land, as by pretended act of sale recorded in St. Tammany parish, La., in Conveyance Book 41, page 508, will more fully appear.

That the said James Pierce at other times pretended to convey and sell to said Luzene P. Pierce and J. Leon Pounds other real estate in said parish of Washington and St. Tammany, the descriptions whereof petitioners are not now able to give, and a large amount of movable property situated in said parishes, a more particular description whereof will be given on the trial of this case.

And petitioners allege that all of said sales and transfers were mere pretenses and simulations made by the said James Pierce and said Luzene P. Pierce and J. Leon Pounds for the purpose of attempting to place the property of said James Pierce beyond the reach of petitioners, and to prevent petitioners as his heirs from inheriting or acquiring such property, or any of it, after his death, and for the purpose of attempting to donate and give his property to his son, said Luzene L. Pierce, and to his daughter, Burnette Pierce, wife of J. Leon Pounds. And petitioners allege that the property so attempted to be conveyed and disposed of by said James Pierce was worth far more than the considerations expressed in the said alleged deeds as having been paid for the same, and that the considerations alleged in said pretended deeds as having been paid for such property were not paid by the said Luzene P. Pierce and J. Leon Pounds, and were not received by said James Pierce, but that the said alleged deeds were without consideration, and were mere simulations.

And petitioners allege that, if said pretended deeds were not mere simulations, they were fraudulent and collusive, and were made and entered into by said James Pierce and said Luzene P. Pierce and said Leon J. Pounds for the purpose above set forth, and to deprive petitioners of their rights and interest in the property of said James Pierce and in his succession.

That said James Pierce at the time of his death was the owner of a steam sawmill situated in Washington parish, of the value of at least $3,000, which said Luzene Pierce and J. Leon Pounds have taken possession of and converted to their own use.

That said Luzene P. Pierce and J. Leon Pounds refused to recognize petitioners as having any ownership of or any interest in the lands and property above described and mentioned, and claim that they are the sole owners thereof.

That since the execution of said pretended deeds, and since the death of said James Pierce, the said Luzene P. Pierce and J. Leon Pounds have cut and taken from the lands above mentioned timber to the amount and of the value of upwards of $10,000, and have converted the same to their own use, and have refused to account to petitioner for the same, or any part thereof.

That petitioners Rosa Byrd, Laura Williams, and Magnolia Stewart, as forced heirs of said James Pierce, are the owners each of one-eighth interest in the property of the succession of said James Pierce, and your petitioners the children of said Cintella Pierce, deceased, are the owners together of a one-eighth interest therein; and petitioners are entitled to have said simulated and fraudulent sales, transfers, and donations above mentioned set aside and declared to be null and void, and petitioners recognized as entitled to their legal share and interest therein.

In view of the premises, petitioners pray for the citation of the said Luzene P. Pierce and J. Leon Pounds, and, after due proceedings, for judgment annulling and setting aside as simulated and fraudulent the pretended conveyances and transfers above set forth,

and such other pretended conveyances and transfers of the same character as petitioners may produce proof of on the trial of this action, and recognizing petitioners as owners in the proportions above set forth of all such property, and of all the property belonging to the succession of said James Pierce, deceased, and for judgment against said Luzene P. Pierce and J. Leon Pounds for one-half of the value of the timber cut and taken by them off the lands of said James Pierce, and petitioners pray for all further necessary orders and decrees in the premises, and for general relief, and for costs.

Defendants excepted that there was a misjoinder and a cumulation of action. They prayed that all proceedings be stayed until the plaintiffs elect which of the defendants they should continue these proceedings against and which they should continue to prosecute, dismissing as to the others.

Under reservation of the exceptions filed by them, defendants answered, first pleading a general denial. They admitted that they are the holders of the following described property, to wit: The S. W. ¼ of S. E. ¼ in section 27, and W. ½ and S. E. ¼ and lots 1 and 2 in section 34, John Mizell headright, No. 43, S. W. ¼ of section 27, being partly in St. Tammany parish and partly in Washington parish. The Jesse Lee headright, No. 48, less 170.28 acres previously sold, all being in township 4 S., range 13 E., St. Tammany parish, La. Jesse Lee headright, No. 49, and 100 acres off the north end of section 1; one undivided half of 400 acres of land off the east side of the Mahlen Holden headright, No. 54; one undivided half of Mahlen Holden headright, No. 56; one undivided half of 130.70 acres of land, being off the south end of Cornelius Cooper headright, No. 56; one undivided half of 130.70 acres of land, being off the south end of Cornelius Cooper headright, No. 38—all being in township 5 S., range 13 E., together with all the buildings

and improvements on said lands, and containing in all 2,222.10 acres, in St. Tammany parish, La.

Also 200 head of stock cattle, branded "77," and marked with upper square in one ear and under square in the other ear, ranging in the vicinity of Red Bluff, on Pearl river, in St. Tammany parish, in Book 39, pages 327, 328.

A certain piece or parcel of land situated in the parish of Washington, state of Louisiana, being the Burril Perry headright, No. 49, containing 401.51 acres, and the E. ½ of N. E. ¼ and N. E. ¼ of S. E. ¼ of section 15, and S. W. ¼ of N. W. ¼ and W. ½ of S. W. ¼ of section 14, and lot No. 4 or N. W. ¼ of N. W. ¼ fractional section 23, and S. E. ¼ of N. W. ¼ and N. E. ¼ of S. W. ¼ of section 14, and N. W. ¼ of S. E. ¼ and lot 3 of section 27, all in township 4 S., range 13 E., in Washington parish, La., containing 834 acres, together with all the buildings and improvements thereon.

That defendants acquired the above-described property from James Pierce on the 21st day of February, 1903, said deed being recorded in conveyance records of Washington parish on August 11, 1904, in Book 8, page 507, and that defendants acquired the following described property from James Pierce on the 30th day of July, 1904, said deed being recorded in conveyance records of Washington parish on August 11, 1904, in Conveyance Book 8, folio 507, being 200 acres of land situated in Washington parish, La., said land being in the southwest corner of Francis Passon's headright, No. 45, township 3 S., range 10 E.

All of said property was acquired from James Pierce by defendants in good faith and for a good and valid consideration; said consideration consisting of the payment of cash money to James Pierce, the assumption and settlement of obligations due and owing by James Pierce at his request, and in settle-

ment of the interest of Luzene P. Pierce in the succession of his mother, Ailsey Morris, which was purchased by James Pierce, and the agreement to support and care for James Pierce during the last years of his life, which your defendant did, and for other good and valid considerations, all of which will more fully appear on the trial of this cause. Defendant, further answering, says that the following described property, situated in St. Tammany parish, La., to wit: The W. ½ of the S. E. ¼ of section 7, and N. ½ of N. E. ¼ of section 18, township 5 S., range 14 E., containing 160 acres, was transferred to this defendant Luzene P. Pierce by his father, James Pierce, as a donation, and was without any consideration; that your defendant and his father, James Pierce, believed that they had a perfect right to do so, and your defendant did not know anything to the contrary until said property was attacked, and rather than raise any question in regard to the matter defendant Luzene P. Pierce transferred said property back to the estate of James Pierce on the 28th day of May, 1908, and the said property is now being administered in the succession of James Pierce, No. 591 of the docket of the Twenty-Sixth judicial district court of Louisiana, St. Tammany parish, and the costs of this proceeding to and including the time of said transfer of the said land made back to the succession of James Pierce have been paid, and the plaintiffs herein were notified through their attorney of said transfer. And defendants further aver that this suit is not brought in good faith, but is brought for the sole purpose of harassing and annoying defendants.

In view of the premises defendants pray that plaintiffs' demand be rejected, and their suit dismissed, and for costs and general relief.

Olivia Pierce, wife of David Richardson, and Ellen Wood, wife of Delos Wood, filed a petition of intervention and opposition in the suit. They alleged that a suit entitled "Rosa Byrd, Wife of Leon Byrd, et al. v. Luzene P. Pierce et al.," No. 939 of the docket of the Twenty-Sixth judicial district court, has been brought in the district court of the Twenty-Sixth judicial district for the parish of Washington to recover certain property, which is more fully described in plaintiff's petition, from Luzene P. Pierce and J. Leon Pounds, which property was transferred to them by petitioners' deceased father during the years 1903, 1904, and 1905, on the ground that said transfer was simulated and fraudulent, without consideration, and was made for the purpose of defrauding the forced heirs of James Pierce out of said property. Petitioners desired to join the defendants in this action and to oppose the application of the plaintiffs, as they believe that said suit was instigated through malice, prejudice, and greed; that they know of their own knowledge that said transfers made by their deceased father were made in good faith and for a valuable consideration, and they do not believe that said transfers should be set aside.

In view of the premises, petitioners prayed that they have leave to file this intervention and third opposition, that a certified copy be served on the plaintiffs and defendants, and that after due legal proceedings had there be judgment dismissing and rejecting the plaintiffs' demand, and for costs and general relief.

The district court rendered judgment in favor of the defendants and against the plaintiffs, rejecting the demands of the plaintiffs, and decreeing the defendants Luzene P. Pierce and J. Leon Pounds to be the owners of the following described property in St. Tammany and Washington parishes, viz.:

The S. W. ¼ of the S. E. ¼ section 27, and the W. ½ of the S. E. ¼ and lots 1 and 2 of section 34, in township 4 S., of

range 13 E.; the John Mizell headright, No. 43, and the S. W. ¼ of section 27, being partly in St. Tammany parish and partly in Washington parish, and the Jesse Lee headright, No. 49, less 170.28 acres, all being in township 4 S. of range 13 E., St. Helena meridian; Jesse Lee headright, No. 49, and 100 acres off the north end of section 1, one undivided half of 400 acres of land off the east side of Mahlen Holden headright, No. 56, one undivided half of 130.70 acres of land, being off the south end of Cornelius Cooper headright, No. 38, all being in township 5 S. of range 13 E.— together with all the buildings and improvements on said land, and containing in all 2,222.10 acres in St. Tammany parish.

Also the Burril Perry headright, No. 49, containing 401.50 acres, and the E. ½ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ of section 15, and the S. W. ¼ of N. W. ¼ and W. ½ of the S. W. ¼ in section 14, and lot No. 4, or N. W. ¼ of N. W. ¼, of fractional section 23, and S. E. ¼ of N. W. ¼ and N. E. ¼ of S. W. ¼ of section 14, and N. W. ¼ of S. E. ¼ and lot 3 section 27, all in township 4 S. of range 13 E., in Washington parish, containing 834 acres, together with all the improvements and buildings thereon. Also 200 head of stock cattle branded "77," and marked with upper square in one ear and under square in the other, being the property described in plaintiffs' petition. It is further ordered that the plaintiffs in this case pay all cost.

The judge assigned the following reasons for his judgment:

"This is an action en declaration de simulation, in which plaintiffs seek to set aside the sale of certain lands, described in their petition, by James Pierce to Luzene P. Pierce and J. Leon Pounds. The prayer of their petition is that 'after due proceedings there be judgment annulling and setting aside as simulated and fraudulent and pretended conveyances and transfers above set forth, and such other pretended conveyances and transfers of same character as petitioners may produce proof on the trial of this action, and recognizing petitioners as the owners in the proportion above set forth, all of which property and all of the property belonging to the succession of said James Pierce, deceased, and for judgment of said James Pierce, deceased, and for judgment against said Luzene P. Pierce and J. Leon Pounds for one-half the value of the timber cut and taken by them off the land of said James Pierce.' They further pray for all necessary orders and general relief. They allege: That they are the forced heirs of James Pierce, who died on August 21, 1905, and that prior to his death said James Pierce was the owner of certain lands, described in their petition, in St. Tammany and Washington parishes, also a large amount of movable property, and that before his death the said James Pierce colluded and conspired with defendants Luzene P. Pierce and J. Leon Pounds, the husband of Burnette Pierce, to deprive petitioners of their rights and interest in his property and succession, and to that end and for that purpose he made and executed to said Luzene P. Pierce and J. Leon Pounds simulated and fraudulent conveyances of his real estate and other property, all of which is fully set forth in their petition. That all of said sales and transfers were mere pretenses and simulations, and made for the purpose of attempting to put the said property beyond the reach of petitioners, and to prevent them from inheriting or acquiring said property after his death, and for the purpose of attempting to donate and give his property to his son, Luzene P. Pierce, and his daughter, Burnette Pierce, wife of said J. Leon Pounds.

"That the property so attempted to be conveyed and disposed of was worth far more than the consideration expressed in said alleged deeds as having been paid for same. That said consideration so expressed in said deeds was not paid by said Luzene P. Pierce and J. Leon Pounds; and was not received by said James Pierce, but that the said alleged deeds were without consideration and were mere simulations. Petitioners alleged that, if said deeds were not mere simulations, they were fraudulent and collusive, and were made and entered into by said James Pierce and said Luzene P. Pierce and said J. Leon Pounds for the purpose of depriving petitioners of their rights and interest in the property of said James Pierce and in his succession. The evidence taken on the trial of this case discloses the fact that James Pierce was at one time a large property owner in Washington and St. Tammany parishes, which belonged to the community which existed between him and his wife, Ailsey Pierce, who died about May 7, 1899. The same petitioners were plaintiffs in a former suit, entitled 'Rosa Byrd et al. v. James Pierce et al.,' No. ——— of the docket of the Twenty-Sixth judicial district court for St. Tammany parish, La. In this suit three plaintiffs seek to be recognized as heirs of said Ailsey Pierce, and, as such, owners in indivision of all the lands belonging to such community. The record in this suit is offered in evidence by the plaintiffs. This litigation

was never carried to judgment, it having been compromised by James Pierce agreeing to pay the plaintiffs $500 each and other costs, all of which will be noted in its proper place; and I might say at this juncture that there were nine heirs of Ailsey Pierce, deceased, who, it seems from the testimony adduced, were to receive the same settlement. There is no serious question of law involved in the issues presented in this case. This is an action brought by a portion of the forced heirs of James Pierce, deceased, under the provisions of Act No. 5, p. 12, of 1884, now incorporated in the Revised Civil Code in article 2239, but turns, I might say, exclusively on questions of fact. Fortunately for the court, there is very little conflicting testimony, although on some important points it leaves the fact somewhat obscure. This is noticeable in reference to the consideration actually paid by defendants to James Pierce, and, as inadequacy or want of consideration is one of the strongest badges of fraud or simulation, it becomes important what this consideration was. The best evidence of this fact is the original memorandum or agreement between James Pierce and defendants, marked 'D 4,' referred to in the testimony of Judge T. M. Burns.

"This agreement shows a consideration tantamount to cash of $5,000, $4,000 of which was the assumption of certain obligations due by James Pierce and $1,000 representing their interest in the estate of Mrs. Ailsey Pierce. This consideration of $3,000 was the obligation on the part of defendants to take care of said James Pierce during the balance of his life. We will now turn to the evidence of other considerations, which was given without objection. It is in evidence that defendants assume an indebtedness due by James Pierce to H. J. Smith of $1,900. (See testimony of H. J. Smith, p. 108.) True, we cannot add the whole amount of this indebtedness as an addition to the consideration actually paid, for the reason that the evidence shows that only one-third of this was, strictly speaking, due by James Pierce, as the evidence shows that it was a debt of the firm of Pierce & Pounds, of which he was a member with a one-third interest. There were also various other small amounts too numerous to mention (see testimony of B. Labat, taken before the clerk of court for St. Tammany parish; also testimony of both defendants), making the amount of cash actually paid, or for the payment of which defendants were liable, approximately $6,500.

"We will now consider the value of the property which defendants purchased from James Pierce. There is a mass of testimony in the record by a number of witnesses for both plaintiffs and defendants to prove the value of this property. In reference to the mill property, the evidence shows that it had very little value at the time of this sale. The highest estimate of the one-third interest of James Pierce that could be placed on this property under the testimony would be approximately $200. The same thing is true of the one-sixth interest of James Pierce in the Poole Bluff Turpentine Company. This

firm seems to have been in a bad way financially at that time. Warren Thomas, one of the members of this firm, testified that he bought the one-fourth interest of L. O. Mitchell in the firm for $250 and considered it more than it was worth. (See testimony of Warren Thomas, p. 100.) I conclude, therefore, that $500 would be a liberal estimate on the value of James Pierce's one-sixth interest in Poole Bluff Turpentine Company and one-third interest in the Pierce & Pounds mill. Add to this an estimate of $2,000 as the cash value of 200 head of stock cattle, and it is the opinion of the court that we have a fair estimate of the value of the property, exclusive of the land, transferred by James Pierce to the defendants.

"We will next consider the question of the value of the land. The various witnesses placed the value of these lands at anywhere from $1.25 to $7 per acre; the basis of all testimony in this respect being the price brought by similar lands at that time. Hence it is difficult to arrive at a just valuation or what would be considered a just valuation, of the land involved in this suit at that time. One thing stands out clear, and that is that there was not much valuation placed on land at that time. A. C. Williams, witness for plaintiff, testified that he attempted to sell 250 acres of land in 1904 for $1,000. (See testimony, pages 27 and 28.) Marshall Richardson, another witness for plaintiff, testified that he bought 160 acres for $500, and that the land had improvements on it which he considered worth $400. He further testified that he owned a tract of land of 430 acres that he tried to sell for $500. (See testimony, pages 42–44.) On the other hand, it is in evidence that lands of about the same class were sold for $7 per acre (see testimony of D. F. Sheridan, p. 149); and a number of other sales from $2.50 to $5 per acre. After a careful consideration of all the testimony on this point, the irresistible conclusion is that no better answer can be found on the question of the value of these lands than that given by R. E. Keaton, who, in answer to this question, replied in part: 'It depended on what a man wanted for it. If he wanted a little place for a farm, it was different in the price according to the tract. It was from $2 to $2.50 per acre. Pine and swamp and cutover lands, of course, were all considered.' (See testimony, pages 66, 67.) The mortgage granted by James Pierce to Anthony Vizard marked 'Defendants' Exhibit D–4,' was given to secure a loan of $2,000, and as security for this amount he gave a mortgage on more than 3,000 acres of land. This is important only in so far as it goes to show what was considered to be a reasonable valuation on these lands at the time of the transaction complained of in plaintiffs' petition.

"As before stated, the cash actually paid by these defendants, or its equivalent, was approximately $6,500. Deducting from this $2,500, being the value of one-third interest of said James Pierce in the Pierce & Pounds mill and his one-sixth interest in the Poole Bluff

Turpentine Company and 200 head of stock cattle, there is a residue of $4,000. These figures mean that a consideration of $1.25 per acre was paid for the land described in plaintiffs' petition. The testimony shows conclusively that this was paid in actual cash, or its equivalent; and, considering the value of lands at that time, it would take evidence of the strongest character to overcome the presumption that these sales were made in good faith and at what was at that time considered a reasonably fair price for lands of this class. There was considerable evidence introduced attempting to show that James Pierce made these transfers complained of with the intent to defraud plaintiffs and deprive them of their rights to share equally in the division of his property after his death. On the trial of the case great latitude was allowed by the court for the introduction of evidence tending to show this fact; but the evidence adduced on the trial of this case to show this fact would have to be supported by the strongest corroborative evidence of fraud or simulation to carry conviction to the mind of the court. True, it was shown that James Pierce was very much angered with plaintiffs on account of their former suit that they had filed against him for the recovery of their interest in their mother's estate; but those who have observed the foibles of human nature know that it would have been strange indeed if he had not become angered. The father was getting old and infirm, and unable longer to look after his affairs, and these plaintiffs, who were his children, and to whom he had a right to look for support, aid, and affection in his declining years, involved him in litigation, forcing what one witness (Judge T. M. Burns) terms a bad compromise, and brought about the very condition about which plaintiffs so bitterly complained. In the case of Slocumb v. Real Estate Bank of Arkansas, 2 Rob. 92, it is stated in the syllabus of the case that proof of questions calculated to create a doubt as to the fairness of a sale is not enough to set it aside. The evidence is conclusive that James Pierce had no money at the time this suit was filed to pay these plaintiffs, and he had to borrow the money to pay them according to the terms of the compromise that they had made. He was old and unable to attend to his ordinary affairs. Defendants assumed the obligation that he had incurred to pay these plaintiffs, besides other obligations which were pressing, a consideration, as stated before, which was in the mind of the court reasonable and fair in the light of conditions as they existed at the time, and the evidence showing intention to defraud on the part of defendants and James Pierce is of such a flimsy character that, without discrediting a single witness of plaintiffs, the court does not feel that it would be justified in attaching any serious weight to it for these reasons. It is therefore ordered, adjudged, and decreed that plaintiffs' demands be rejected, and they pay all cost of this suit, and that there be judgment accordingly."

After an application for a new bond upon the ground that the judgment rendered was "contrary to the law and the evidence" had been overruled, plaintiffs appealed. The appellees have pleaded in this court the prescription of one year in bar of plaintiffs' claim and charge of fraud. The case was tried before M. W. Ott as judge ad hoc, in place of the district judge, recused.

The issues between the parties submitted to this court for decision are disclosed in the pleadings and judgment which have been set out. In the brief filed on behalf of the plaintiffs, counsel say:

"Without entering into a discussion of the evidence, which will serve no good purpose, as we know the court will examine the evidence for itself, we submit that, taken together, it shows a conspiracy and design by James Pierce and the defendants to so dispose of Pierce's property that those of the heirs who had angered him by objection to his spoliation of the property receive nothing from his estate."

An examination does not cause us to reach that conclusion. The acts under which the defendants claim title were undoubtedly not simulated. The defendants assumed and paid the mortgage debt held by Vizard for $2,000. They paid the heirs of James Pierce's wife the respective amounts due them under the compromise entered into in the suit which plaintiffs brought against their father. They paid the costs of suit and the attorney's fees. They paid a large amount of debts due by them to third parties, and they assumed the obligation, with which they complied, of supporting him during his life. Under such a condition of things, the claim that the acts were "simulations" must fall to the ground.

Plaintiffs urge that, if not simulated, the acts were passed under and in furtherance of a conspiracy between Pierce, his son, L. P. Pierce, and his son-in-law, Pounds, to so dispose of his estate that the plaintiffs should take nothing from his estate. The father was evidently angered by the suit brought against him; but, whatever his feelings in

respect thereto were, we do not think that they formed the motive for his passing the acts. We think that the father's feelings played little part in that matter, and that he was forced into passing the acts by the situation of his affairs, resulting from that suit and his personal condition at that time. He was then an old man, not fitted for active work. He was without money, and debts were pressing upon him which he himself was unable to meet. There was every probability that they would be enforced, and, if enforced, his property would be sacrificed. He had no alternative but to take the course he did. His volition had little to do with his action. We do not think the consideration of the sales was such as to enable plaintiffs to set them aside. Present values in the parish of Washington and St. Tammany furnish no standard of comparison for prices of land at the time the sales were made. The construction of a railroad through these parishes and the construction of sawmills have brought about almost a phenomenal change in respect to values of land there. The lands in question were what is known as "cut-over" lands, lying to a considerable extent in the swamps, for which there was very little demand, while the cattle which were sold were on the range, subject to range delivery. The alternative claim of the plaintiffs is that the court should hold the acts to be "disguised donations" to the defendants. They maintain that the evidence raises a strong "presumption" to that effect.

Article 2444 of the Revised Civil Code provides that:

"The sales of immovable property made by parents to their children may be attacked by the forced heirs as containing a donation in disguise if the latter can prove that no price has been paid or that the price was below one-fourth of the real value of the immovables sold at the time of the sale."

That article is still in force. The passage of Act No. 5, p. 12, of 1884, amending article 2239 of the Code, does not affect it. That statute bears upon the character of the evidence which forced heirs are entitled to bring to bear in support of a charge of simulation, but does not change the obligation in respect to the burden which they bear regarding presumptions and proof.

The plaintiffs have not brought this case within the range of a presumption against the acts complained of. Laycock v. Byrd, 13 La. Ann. 173; Brown v. Brown, 30 La. Ann. 966; Moore v. Wartelle, 39 La. Ann. 1067, 3 South. 384, and authorities therein cited; Landry v. Landry, 40 La. Ann. 229, 3 South. 728.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.