138 So.2d 41 (1962)
SUCCESSION of Elson A. DELAUNE.
No. 5272.
Court of Appeal of Louisiana, First Circuit.
January 29, 1962.
Rehearing Denied March 7, 1962.
Certiorari denied April 12, 1962.
*43 Charles E. Richards and Kalford K. Miazza, New Orleans, for plaintiff.
Montgomery, Barnett, Brown & Read, New Orleans, Knobloch, Knobloch & O'Niell, Peltier & Peltier by Donald Peltier, Thibodaux, for defendants.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff herein, Therese Delaune Steckler, filed this action in the succession proceedings of her deceased father, Elson A. Delaune, contradictorily with the executor of said succession and the heirs thereof (plaintiff's six brothers and sisters) to have certain transfers of property made by decedent during his lifetime to defendants herein, declared null and void for alleged simulation and to require said defendants to collate certain gifts and advantages assertedly made to them during decedent's lifetime insofar as same deprive plaintiff of her legitime. The trial court rejected plaintiff's demands from which said adverse judgment plaintiff has appealed.
A narration of the prolonged, intricate chronology of events culminating in this present action is absolutely indispensable to a clear understanding of the issues involved herein.
Of the marriage between decedent Elson A. Delaune and his wife, Ida Bourg, eight children were born, namely, Marie Delaune Mares, Ida Delaune McGuire, Edmond Delaune, Roland S. Delaune, Therese Delaune Steckler (plaintiff herein), Elson M. Delaune, Dr. Francis F. Delaune and one child who died in infancy. All of the hereinabove named seven children survived both their said father and mother excepting Elson M. Delaune who survived his said mother, Ida Bourg Delaune, but predeceased his said father, Elson A. Delaune, whose succession is involved herein. The minor heirs of Elson M. Delaune, namely, Elaine Marie Delaune, Elson M. Delaune, Jr., Robert Alex Delaune and Curtis Wayne Delaune, were made parties defendant in these proceedings through their mother and natural tutrix, Mildred Delaune LoCoco.
It is uncontroverted that the sequence of events preceding this litigation commenced *44 January 16, 1945, on which date decedent Elson A. Delaune and his wife, Ida Bourg Delaune, wrote their seven children letters identical to the following missile received by plaintiff, Therese Delaune Steckler:
 "E. A. Delaune
 "Lockport, La., January 16, 1945
"Dear Therese:
"Your mother and I are both advanced in years, and as God has ordained it, our time on this earth is limited.
"We both wish to arrange our earthly affairs and to that end, we desire to do the following:
"We will sell and transfer to each of our seven children for a good and valuable consideration, a certain described property (real estate) now belonging to us, said consideration to be represented by a note executed by each of you, payable on or before ten years from date, and bearing six per cent interest from maturity untill (sic) paid, and to be secured by a vendor's lien and privilege and special mortgage on the property transfered (sic). Since the note is to bear no interest untill (sic) after maturity your mother and I as vendors will retain the usufruct (including all minerals) of the respective property so sold to each of you during our natural life.
"In making this transfer, your mother and I will so sell you your respective tract, so that same will in our judgment be of equal value and in so doing we will take into consideration the leasing and oil values as well as oil reservations affecting each particular tract.
"We shall determine the fair value of each tract and make this the consideration of the sale and transfer.
"In making these sales of our property, we want to be the judge as to the particular property sold to each of you, and its value and consideration.
"We want you to feel assured that in making these sales to you in the manner above set forth, we will be just and fair as we have always tried to be.
"Your mother and I are anxious that each of you accept this offer so as to make it agreable (sic) to all. However, we will carry out the above to those that will accept it.
"We desire to maek (sic) the transfers herein suggested as soon as possible, and an early reply as to your wish will be appreciated.
 "Your father and mother.
 "E. A. Delaune
 "Ida B. Delaune"
In reply to the foregoing communication plaintiff answered her said parents, on January 22, 1945, as follows:
 "301 Papworth Ave.,
 "New Orleans, La.
 "January 22, 1945
"Dear Mama & Papa:
"I have received your letter of January 16, relative to the distribution you mentioned. I read your letter carefully and I believe what you propose to do has been given lot of consideration by you and that you intend to be just and fair.
"However, it appears to me that by obligating your children with promissory notes you are complicating your affairs rather than settling them and also complicating the affairs of your children. Regarding the note how do do you suppose a poor housewife will be able to meet the obligation of a note payable at maturity.
"I deem it necessary that I know more about your plans of distribution. Wil (sic) you please tell me just what you have in mind?
 "Sincerely,
 "Your daughter,
 "Therese Steckler"
*45 Upon receipt of the aforesaid communication from plaintiff herein Mr. and Mrs. Delaune responded thereto by letter of January 23, 1945, in which they stated:
 "E. A. Delaune
 "Lockport, La.
 "Jany. 23, 1945
"Dear Therese,
"We have your letter of the 22nd, in reply to ours of the 16th inst.,
"We beleive (sic) and are satisfied that our letter of the 16th. was very clear and definite.
"We will not complicate our affairs by having our children to sign a promissory note for the property so transfered (sic). It is our intention that by the time the note becomes due, you will have taken care of it.
"The plans of distribution are specified in our letter of the 16th.
"For your information we have the approval of five of the children and all are well pleased.
"With love to you, Steck and the boy, we are
 "Your Mother and Father
 "E. A. Delaune
Plaintiff, fearing that she would become obligated upon the note she would be required to execute as consideration for the proposed sale to her, and being further apprehensive that the note might eventually fall into the hands of one of her brothers whom she felt would not hesitate to foreclose thereon, declined the offer in her parents' said letters. She further refused to participate in the plan outlined by her parents for the reason she felt she would be "buying her inheritance".
However, the suggestion of the parents was acquiesced in by all of plaintiff's six brothers and sisters and, as a consequence of their mutual agreement, decedents executed (during April and May, 1945) four notarial acts wherein certain specifically described properties were conveyed to defendants herein. Property designated by the parties as Tract Number One (actually consisting of two separate parcels aggregating approximately 200 acres) was, on April 20, 1945, conveyed to defendant Edmond A. Delaune for the purported price of $5,200.00 represented entirely by a note in said amount payable on or before ten years after date and bearing interest at the rate of six per cent per annum from maturity, said note being payable to the order of myself and by the maker endorsed in blank. The note in question was secured by vendor's lien and mortgage on the property described in the instrument of sale. The aforesaid act of sale with mortgage further provided that should foreclosure proceedings be instituted to enforce collection of the mortgage note given in payment for the property transferred, the holder of said note was limited solely to a proceeding in rem against the property and no deficiency judgment could be secured against the purchaser or mortgagor. The sale further reserved to vendors, or either of them during their natural lives, the usufruct of the property sold as well as all oil, gas and mineral rights therein including the right to collect all bonuses and delay rentals derived from mineral leases affecting the property conveyed. On said same date, April 20, 1945, decedents Elson A. Delaune and Ida Bourg Delaune by act identical in terms with the sale to Edmond A. Delaune, conveyed to defendant Roland S. Delaune a tract of land designated as Tract Number Two containing approximately 190 arpents. The price recited therein was $5,200.00 represented by a single promissory note for the entire purchase price said note being due, payable and collectible under the same terms and conditions as set forth in the sale of Tract Number One. A tract designated by the parties as Tract Number Three (actually a town lot in Lockport and a tract containing approximately 160 arpents), was, on April 20, 1945, conveyed by decedents Elson A. Delaune and Ida Bourg Delaune to defendant Francis F. Delaune for the *46 purported consideration of $5,500.00 under terms and conditions identical to those contained in the sale of Tracts One and Two. On May 23, 1945, decedents transferred to defendants, Marie Delaune Mares, Ida Delaune McGuire and Elson M. Delaune, in the proportion of an undivided one-third each, tract designated as Tracts Number Four, Five and Six (actually three separate parcels containing 60 arpents, 280 arpents, and 1,100 acres, respectively) for the recited consideration of $16,500.00 represented by a single promissory note for said amount also due, payable and collectible in the same manner as the notes involved in the sales of Tracts One, Two and Three. This sale also contained a reservation of usufruct and mineral rights identical to those previously mentioned herein. Yet another transaction, namely, the sale of "Rosebud Plantation" by decedent Elson A. Delaune to Elson M. Delaune was confected on December 27, 1940; but plaintiff's attack as to this particular transaction has been expressly abandoned in plaintiff's brief.
Shortly following the aforesaid four sales in April and May, 1945, plaintiff's mother, Ida Bourg Delaune, departed this life leaving a last will and testament designating her husband, Elson A. Delaune, as executor of her estate. Her will, probated January 15, 1946, made reference to the aforesaid four sales to her children, remitted the indebtedness represented by each of the aforementioned promissory notes to the extent of her undivided one-half interest therein and further declared that in the event said sales should be held invalid she bequeathed to the vendees (defendants herein) her undivided half interest in the properties transferred to them in order to effectuate said transactions insofar as concerned her interest in the properties described therein. To plaintiff herein, said testatrix bequeathed an undivided half interest in properties designated by the parties hereto as Tract Number Seven (actually two tracts measuring 3½ acres by 40 arpents and 1¼ acres by 40 arpents, respectively). Said decedent further stipulated in her will that all of the properties sold by her and her said husband prior to her death were believed to be of equal value but that in the event there were any difference in value, she gave same to the respective legatees as extra portions. The remainder of her property (including an undivided half interest in a tract designated by the parties as Tract Number Eight and not disposed of by testatrix during her lifetime), Mrs. Delaune left to her seven children, including plaintiff, in equal portions. To her husband, Elson A. Delaune, said decedent bequeathed the usufruct of all properties she died possessed of, including the properties bequeathed to her various children as hereinabove set forth.
As executor of his wife's succession, decedent Elson A. Delaune, concluded the administration of her estate and sought to place the legatees (plaintiff and defendants herein) in possession of their respective legacies to which proposal defendants agreed and plaintiff declined. Since plaintiff refused to either accept or reject her mother's succession plaintiff's father (as executor) ruled plaintiff into court praying that plaintiff be required to formally accept or renounce her inheritance. Plaintiff answered the rule and after trial thereof plaintiff's opposition thereto was dismissed and judgment rendered placing plaintiff in possession of her legacy under the will, which included an undivided half interest in Tract Number Seven and an undivided seventh of an undivided half in and to Tract Number Eight. Following this development plaintiff and her father entered into a compromise agreement wherein, for a cash consideration of $3,815.33 paid by the latter, plaintiff confirmed and ratified her mother's will in its entirety and agreed, inter alia, to dismiss with prejudice a suit filed by plaintiff in the Seventeenth Judicial District Court involving matters related to the issues involved herein.
Following the death of his wife and placement of her heirs in possession of her estate as hereinabove indicated, decedent *47 Elson A. Delaune (who held the usufruct of her property under her will and the usufruct and mineral rights in Tracts One through Eight, inclusive, by virtue of the mineral reservations contained in said deeds), experienced difficulty in leasing the properties for mineral development because prospective operators declined to accept leases upon the signature of Delaune alone. To alleviate this condition a so-called "Six Way Family Agreement" (hereinafter sometimes referred to simply as "Family Agreement"), was entered into between said usufructuary and the six defendants in these proceedings (plaintiff herein declining to join therein). Under the terms of said agreement (dated June 19, 1951) Mr. Delaune transferred to his six children (defendants) the properties previously sold to them together with all the oil, gas and mineral rights therein, reserving to himself an undivided 1/16th royalty interest only in each of the tracts and, in addition, cancelled the unpaid portion of the four notes representing the purchase price of the six tracts of land sold defendants. It is conceded that upon the date of this agreement none of the defendants had paid any portion of said notes. In consideration of the transfer to them by their father, defendants constituted him their irrevocable agent and attorney in fact for the purpose of dealing with the mineral rights in the several properties subject only to the provision that no lease agreement could be made for less than $5.00 per acre or reserve to the lessor less than the usual one-eighth royalty.
Plaintiff concedes that during the interim between the death of her mother and that of her father, the latter distributed equally among his seven children cash sums aggregating $84,000.00.
Initially plaintiff sought to have the four sales of Tracts One through Six, inclusive, the sale of Rosebud Plantation, the Family Agreement and certain cash gifts made by her parents to defendants declared either simulative or subject to collation for infringement upon her legitime. However, plaintiff has abandoned all attacks save those leveled against the aforesaid four sales of Tracts One through Six, inclusive, and the Family Agreement. In addition, plaintiff prays for an accounting of all fruits and revenues derived by defendants from the properties allegedly conveyed and alternatively, for collation of the value of the properties in the event the various transactions are held to be valid as donations or legacies.
Defendants, of course, contend that the four sales under attack herein are not simulative inasmuch as consideration therefor, in the form of a negotiable promissory note, was executed by the purchaser in each instance, and that said notes could have been negotiated by the vendor at any time. Defendants further contend that the Family Agreement of June 19, 1951 is likewise valid in that it is supported by consideration in view of the fact that valuable property rights were in effect transferred by mutual agreement of the parties thereto. Additionally, defendants maintain that by virtue of the compromise agreement of November 19, 1948, between plaintiff and decedent, Elson A. Delaune, wherein plaintiff compromised all differences with her said father and ratified the will of plaintiff's mother, plaintiff is estopped to question the validity of any of the transactions herein assailed. Plaintiff, however, maintains defendants' plea of estoppel is without merit for the reason that plaintiff is not herein attacking the validity of the judgment in the succession of plaintiff's mother but is only seeking to set aside the controversial transactions insofar as concerns the succession of decedent Elson A. Delaune. In this connection plaintiff contends there can be no estoppel as regards the estate of her father for the reason that so long as said decedent lived plaintiff, as his heir at law, was without right or authority to question the validity of any transfer made by said decedent. The trial court did not pass upon defendants' plea of estoppel but preferred to dispose of all issues upon the merits. Defendants reurge the plea of estoppel before this Court.
*48 While it is quite true, as pointed out by defendants, that although plaintiff herein was engaged in litigation with her father concerning various aspects of the succession of plaintiff's mother, plaintiff nevertheless made no attempt to have any of the disputed transactions declared simulations until after the death of plaintiff's father. This fact, however, is of no significance in view of the circumstances surrounding the case at bar. It will be recalled that Mrs. Delaune, being fearful the validity of the four transactions might be put at issue, took the precaution of providing against such eventuality by stipulating in her will that should said transfers be declared invalid, they should nonetheless stand as bequests and upon the occurrence of such contingency she bequeathed each said tract of land to the vendees named in the respective sales. Plaintiff, therefore, was indeed faced with a dilemma for if she successfully contested the sales she still faced the obstacle presented by the aforesaid terms of her mother's will, the validity of which it is not necessary for us to determine as will hereinafter be pointed out. Moreover, mere silence and delay cannot cause loss of title to real property except by the effect of the law of prescription. Merritt v. Hays, 237 La. 557, 111 So.2d 771. Defendants cite no authority in support of the plea of estoppel being content merely with the statement that the cases relied upon by plaintiff are distinguishable from the case at bar on the ground that in the instant case plaintiff ratified, approved and confirmed the transfers by virtue of the compromise agreement with decedent, Elson A. Delaune. The answer to defendants' contentions on this particular issue is that any attempt by plaintiff to attack the sales insofar as her right of inheritance from decedent, Elson A. Delaune, is concerned, before his death, would have been premature. Maxwell v. Maxwell, 180 La. 35, 156 So. 166. We conclude, therefore, defendants' plea of estoppel is without merit.
Concerning the alleged invalidity of the four controversial sales and the Family Agreement, the following provisions of L SA-C.C. are pertinent:
"Art. 2444. Sale of immovables by parents to children, disguised donation.
"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
"Art. 2480. Retention of possession by seller, presumption of simulation.
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
Defendants take the position that under the provisions of LSA-C.C. Article 2444, before the disputed transactions may be set aside as donations in disguise, plaintiff, as forced heir of decedent, must discharge the burden of proving that no consideration was paid therefor or that the price received was below one-fourth of the value of the property transferred, at the time of the sales in question. Defendants further contend that the provisions of Article 2480 (which places the burden upon the party relying upon the sale when the vendor retains usufruct or possession of the property sold) has no application to forced heirs but is intended primarily for the protection of creditors. In this respect defendants' argument is without merit considering Article 2480, LSA-C.C. has been held available to forced heirs who are to be considered third persons when they are attacking, for alleged simulation, the validity of transactions entered into by those from whom they *49 inherit. Miller v. Arnold, La.App., 81 So. 2d 181, Camus v. Camus, La.App., 91 So.2d 120.
We acknowledged that the present jurisprudence is somewhat confused regarding application of Articles 2444 and 2480, LSA-C.C. and a reading of the cases discloses some inconsistency in this regard. However, after considering the issue most carefully we conclude the effect of the entire jurisprudence on the subject matter to be that the provisions of both said codal provisions are available to a forced heir alleging a transaction to be simulated and therefore in derogation of his legitime. Under Article 2444 the burden is upon the person contesting the transfer to show that no consideration was paid or that the consideration actually paid was less than one-fourth the value of the property conveyed. Blackman v. Brown, 155 La. 959, 99 So. 711; Bourgeois v. Bourgeois, 202 La. 578, 12 So. 2d 278; Byrd v. Pierce, 124 La. 429, 50 So. 452; Johnston v. Bearden, La.App., 127 So.2d 319. The foregoing, however, is not true in those instances wherein the purported vendor reserves to himself the usufruct of the property sold. In this latter event the provisions of Article 2480 places the burden of proof on the party relying upon and asserting the validity of the sale. Camus v. Camus, La.App., 91 So.2d 120; Stipe v. Simon, 223 La. 542, 66 So.2d 330. The degree to which the latter rule has been extended is evidenced by Dietz v. Dietz, 227 La. 801, 80 So.2d 414 in which case it was held that proof of a vendor's collection of rents and the proceeds from an oil lease affecting property sold is sufficient to place the burden of proof upon the party seeking to establish the validity of the sale.
Defendants have directed our attention to numerous decisions in support of the rule that the law does not favor actions by forced heirs to set aside transactions of their ancestors and that the burden of proof rests upon the plaintiff to show that the contested transactions were without consideration. We have carefully read each of the cited decisions and find that in not one instance was the right of usufruct reserved or possession retained by the vendor. Moreover, we seriously question the wisdom of those pronouncements to the effect the law does not favor such actions, in view of LS A-C.C. Article 2444 which expressly confers upon children the right to attack transactions by their parents under the circumstances set forth in the Article.
In summation of the issue, we believe the law of this state to be that there can be no donation of a naked ownership with reservation of the usufruct to the donor, such a transaction being void by virtue of its constituting a donation in disguise. See Article 1533, LSA-C.C. and cases cited thereunder. A sale made by parents to their children is subject to attack by the forced heirs of the donor as containing a donation in disguise. LSA-C.C. Article 2444. If such a sale contains a reservation of the usufruct in favor of the vendor a presumption of simulation is thereby raised and created, in which event the burden rests upon the purported vendee (or party relying upon the reputed validity of the transaction) to show that the sale was not a simulation, LSA-C.C. Article 2480. If there is no retention of possession or reservation of usufruct, the forced heir attacking the transaction bears the burden of proving either that no consideration was paid or that the price was less than one-fourth the actual value of the property on the date of the sale.
A gratuitous disposition is strictly controlled under the law of this state, both in substance and form. It may be accomplished only by donation inter vivos or mortis causa. LSA-C.C. Article 1467. The inter vivos donor must divest himself presently and irrevocably of the subject matter of the donation in favor of the object of his beneficence. A gift during life, in expectation of death, which is not to take effect until after the death of the donor is a donation causa mortis reprobated by the law of this state. LSA-C.C. Article 1469; Succession of Sinnott v. Hibernia Nat. Bank, *50 105 La. 705, 30 So. 233. Attempts to circumvent the stringent legal requirements surrounding donations inter vivos and mortis causa by means of simulated sales wherein the usufruct of the property involved is reserved unto the donor have frequently been annulled. For example see Succession of Yeates, 213 La. 541, 35 So.2d 210. In view of the circumstances shown the burden of proving the validity of the sales rested upon defendants in these proceedings.
We are of the firm opinion that the question of whether or not a particular transfer of property is a valid sale or a simulated transaction must be determined in the light of the facts and circumstances of each particular case. The foregoing principle is so well established that no citation of authority is required in support thereof.
Defendants maintain that the four said acts are valid sales, given for consideration because the notes given by the respective vendees were subject to negotiation by said vendors at any time and, in the event of such negotiation, the holders thereof would have been entitled to enforce collection under the terms of the several mortgages. It is the contention of defendants that, in view of the foregoing, the fact that nothing was paid on the notes is a matter of no consequence, the important aspect being that a valid, outstanding, enforceable promissory note was issued in each instance.
Our detailed consideration of the evidence convinces us beyond any reasonable doubt that neither of said vendors nor any of said vendees intended said notes would be paid or collected. We are constrained to this conclusion by the numerous circumstances surrounding these transactions which, in our humble judgment, make any other conclusion unreasonable and illogical. The notes in question were executed between parents and their children under circumstances which indicate beyond all doubt that decedents were attempting to distribute their estates among their heirs during their lifetime. This fact is readily conceded by all parties hereto, they being further agreed the proposed action of their parents was designed to minimize inheritance taxes which would become due upon their respective estates at their death. Such circumstance, per se, carries the implication or inference of an intention to give or donate rather than sell for consideration. Payment of the notes given could not be demanded by the holder until ten years after date during which period no interest was due thereon. In this regard counsel for defendants contend that waiver of interest by the vendors was in consideration of their retention of usufruct on the properties conveyed. Said reservation of usufruct, however, in itself, gave rise to the presumption of simulation. LSA-C.C. Article 2480. No portion of the purchase price was paid by any purchaser prior to the death of Mrs. Delaune. Another most significant development occurred on October 1, 1945, on which date plaintiff and her brothers, Edmond A. Delaune and Roland S. Delaune, entered into a formal contract wherein the three parties, in anticipation of litigation over their parents' estates, agreed to share the legal expense incident to annulling the transactions herein contested. Said agreement or contract also contained the following pertinent and damaging provision:
"* * * and we further agree that Edmond A. Delaune & Roland S. Delaune promise to testify that the purchase of the Real Estate from their mother and father is a fictitious sale and that they had no intention of paying for it."
We also observe that no portion of the purchase price was paid upon execution of the conveyances in question. Of itself this fact does not stamp these sales with the stigma of simulation but is a facet to be considered herein. Yet another unorthodox feature of these transactions is the fact that each expressly provides that the vendors waive all rights against the purchaser in person and agree that, in the event of non-payment of the notes, collection thereof may be enforced solely by an action in rem against the property only. *51 While this latter provision is not so rare or unusual that it per se characterizes said acts as simulated transactions, it is certainly not a common practice for a vendor to forego the security afforded by the right to pursue the mortgagor in person. In addition to reserving the usufruct of the properties during the lifetime of the vendors, or the survivor between them, said vendors also retained all mineral rights for similar duration.
Counsel for defendant argue that the transactions in question in this matter have stood the test of simulation and have been held valid for purposes of computing State and Federal Inheritance Taxes due on the estate of decedent Ida Bourg Delaune. We submit that the findings of State and Federal Tax Collecting agencies are not binding upon the courts of this state charged with the duty of adjudicating the legal effect of such transactions. We do not mean to infer that determinations by such agencies are to be disregarded or ignoredwe do hold, however, the decisions of non-judicial officials are merely other circumstances to be weighed along with all the evidence in reaching a conclusion in such matters.
We are convinced that the mere giving of a note in alleged payment of the entire purchase price of property conveyed by a purported credit deed, does not per se (especially under circumstances analogous to those involved in the case at bar), constitute the transaction a bona fide conveyance. To give life and legal effect to such transactions the indispensable element of intent must also be present. Validity of such acts does not depend upon whether the evidence of indebtedness may be negotiated or sued upon by the vendor as initial holder but whether the parties, at the time of execution, intended same to be valid and enforceable or mutually agreed the granting of such evidence of indebtedness was for some ulterior, undisclosed purpose. The fact that the notes may have become enforceable had decedents negotiated them to a holder in due course is of no moment. In such event the liability of the purchaser arises not from an intention to be bound but by virtue of his being hoist on his own petards because of the provisions of the Uniform Negotiable Instruments Law which denies him certain defenses against a holder in due course of a negotiable instrument. While it may well be that transactions of this nature may constitute a valid sale as between parent and child under different attending circumstances which disclose that the parties intended payment of the note given in representation of the purchase price, we have searched the record of this case in vain for evidence of such intention. Moreover, the fact remains that said alleged vendors did not negotiate the notes in question but held them under circumstances clearly indicative of lack of intent to demand payment. The issuance of the notes to the contrary notwithstanding, as between the parties to such a transaction, there can be no legal or valid transfer of property in the complete absence of intention that the notes are to be paid by the reputed purchaser. We hold such a transaction to be a sham, a simulation pure and simple. Any other conclusion would, in our considered judgment, completely nullify and emasculate long established statutory rules and jurisprudence regarding simulated transactions. We are not disposed to initiate such revolutionary, far reaching jurisprudence. Consequently, the conclusion is inescapable that the four purported sales executed by decedents during April and May, 1945, were simulations since they were totally devoid of consideration.
Having determined the four credit sales simulated for total lack of consideration, we consider next the effect of the Family Agreement of June 19, 1951, between decedent Elson A. Delaune and his six children. As will hereinafter appear, resolution of this issue is dependent upon the effect to be attributed to the will of decedent Ida Bourg Delaune and the compromise agreement between plaintiff herein and her *52 father, Elson A. Delaune, dated November 19, 1948.
The purported sales being null and void, nothing passed to the vendees named therein. As a consequence, the properties purportedly conveyed remained in the community existing between decedents Elson A. Delaune and Ida Bourg Delaune. Therefore, upon her death, Mrs. Delaune was the owner of an undivided one-half interest therein which she was free to dispose of according to her wishes insofar as permitted by applicable laws of this state. It will be recalled said testatrix expressly confirmed and ratified the four previous sales to defendants and further provided that in the event said sales by held invalid she bequeathed the property to the vendees named therein as particular legatees. Her testament also recited that in the event of any inequality in values the excess was given to the legatees as an extra portion.
Pretermitting entirely any consideration of the validity of such bequests, it suffices to say (under the circumstances of this case) that plaintiff herein is clearly estopped to question and indeed she does not herein question the validity thereof. Plaintiff having been ruled into court and ordered to accept or reject her mother's succession did not appeal the adverse judgment and was placed in possession of her legacy therein. Not only is the matter therefore res adjudicata as to the rights of plaintiff in the succession of her mother, but plaintiff is also forever estopped and precluded from contesting the effect thereof by virtue of the compromise agreement with her father under date of November 19, 1948. Any invalidity otherwise attending the provisions of the will of Mrs. Delaune (whether relative to form or substance) were, insofar as plaintiff is concerned, remedied and set at rest by the subsequent agreement wherein plaintiff compromised all differences with her father and affirmed and accepted the terms of the testament in consideration of the legacy therein received and the payment to her of the additional sum of $3,815.33, cash. In view of the foregoing, it inevitably follows that in pursuance of the will of Mrs. Delaune and the subsequent compromise agreement between plaintiff and her father, defendants herein became the owners, as legatees under the will, of their mother's undivided one-half interest in the respective properties specifically bequeathed to them subject, of course, to the usufruct thereon in favor of Elson A. Delaune to whom said usufruct was granted by testatrix.
Plaintiff's contention that the Family Agreement (in pursuance of which defendants acquired the present decedent's half interest in the properties herein involved) is void for simulation, is patently without merit.
At the time of execution of said Family Agreement defendants were the owners of an undivided half interest in their respective properties subject to the usufruct thereon acquired by decedent Elson A. Delaune as legatee of his predeceased wife, Ida Bourg Delaune.
A simulated sale or transaction is one in which no consideration whatsoever is given in exchange for the property conveyed. In determining whether a particular transaction is simulated the relative value of the quid pro quo is immaterial. If there is any real consideration given, irrespective of how slight or inadequate it may be in relation to the object conveyed, the transaction may not be set aside for simulation. Succession of Rolling, La. App., 127 So.2d 292; Eureka Homestead Soc. v. Baccich, 190 La. 494, 182 So. 653; Freeman v. Woods, La.App., 1 So.2d 134.
A donation in disguise, however, may be either a simulation (when no consideration whatsoever is paid) or an act in which consideration, though paid, is below one-fourth of the real value of the immovable sold. LSA-C.C. Article 2444.
By virtue of the Family Agreement (which plaintiff herein asserts to be simulated, *53 or alternatively, a donation in disguise) decedent Elson A. Delaune conveyed to each of his six children, respectively, the land previously conveyed in April and May, 1944. Of course, being the owner of only an undivided one-half interest in the property, the effect of the transaction was the conveyance of said vendor's undivided interest only including, however, his undivided half of all the oil, gas and minerals, subject to his usufruct of the property acquired as legatee under the will of his deceased wife and by reservation in the agreement with defendants. Additionally he conveyed to defendants his undivided half interest in Tract Number Seven (the other undivided half of which fell to plaintiff under her mother's will and the compromise agreement with her father). Decedent also conveyed to defendants herein his undivided half interest in Tract Number Eight (the remaining half of which was owned by plaintiff and defendants equally in indivision under the will of their mother) subject to his usufruct of the whole of said Tract Number Eight.
In consideration of the transfers made by their father in the Family Agreement, defendants recognized his right of usufruct over all the properties in question, granted him the usufruct of a royalty interest equivalent to an undivided 1/16th of all oil, gas and other minerals that might be produced from said properties and conferred upon him the exclusive and irrevocable right and authority to execute any and all oil, gas and mineral leases affecting the properties, without the joinder or consent of his children subject only to the provision that no lease would be granted for a delay rental of less than $5.00 per acre or reserve less than the usual 1/8th royalty to lessor. Mr. Delaune was granted the further right to retain for his sole benefit all bonuses, delay rentals and other considerations paid under any leases granted. All parties to the Family Agreement were in accord that a 1/16th royalty interest in all of the tracts involved (regardless of individual ownership) would belong to the six children in indivision, subject to the rights granted their father.
With regard to the Family Agreement there can be no doubt but that the reservation by the vendor therein of the usufruct of the undivided one-half interest therein conveyed again raises the presumption of simulation which it is the duty of defendants to overcome. LSA-C.C. 2480; Camus v. Camus, 91 So.2d 120; Stipe v. Simon, 223 La. 542, 66 So.2d 330.
In this instance, however, the presumption of simulation arising under Article 2480 is overcome by the terms of the act itself (which in essence appears to be in the nature of an exchange). There can be no question but that the act itself discloses consideration in the form of a mutual exchange of valuable property rights although the worth thereof remains undeclared by the parties to the transaction.
Granting that, under the laws and jurisprudence effective on the date of execution of said Family Agreement, doubt and uncertainty prevailed regarding the respective rights of the usufructuary and naked owner of real property insofar as concerns the underlying oil, gas and minerals, the usufructuary at least possessed the unqualified right to the royalties from mines, quarries and oil and gas wells open and in production upon the date of commencement of his usufruct. LSA-C.C. Article 552. That the naked owner as well as the usufructuary was deemed to possess some (even though it be vague and uncertain) interest in the oil, gas and minerals beneath properties so held, is indicated by the difficulty decedent Elson A. Delaune experienced in dealing with the property under the right of usufruct granted him as legatee of his wife. Whatever the right of the naked owner may have been quoad bonuses, delay rentals and royalties on the date of said agreement, it is certain beyond doubt that such owner possessed the exclusive right to royalties from all production commencing subsequent to the commencement of the usufruct with *54 which his property was burdened. LSA-C.C. Article 552.
The mere fact that doubt and uncertainty existed with respect to the power and authority of a usufructuary to execute a valid mineral lease without the acquiescence, concurrence or ratification of the owner or owners of the naked title and because of such circumstances, decedent, Elson A. Delaune found it difficult to lease the properties for mineral development is per se sufficient to clothe the respective rights of the usufructuary and naked owner with value. Because of the aforementioned circumstances, the property in question may very well have remained unleased for mineral purposes during the existence of decedent's usufruct had not the Family Agreement been entered into specifically conveying to decedent absolute and unqualified authority to lease same without the consent, acquiescence or ratification of defendants. The existence of the foregoing condition, inter alia, clothed the rights of both usufructuary and naked owners with value inasmuch as each possessed a bargaining power which made compromise mutually desirable and necessary to insure mineral development of the properties. That this situation existed in the case at bar is clearly demonstrated in the record which shows that prior to the execution of the Family Agreement decedent, as usufructuary, experienced considerable difficulty in obtaining mineral leases on subject properties. The effect of the Family Agreement herein assailed as a simulation was to remove all doubt, vagueness and uncertainty with respect to the right, power and authority of the usufructuary to lease the properties for mineral purposes as well as any doubt, vagueness or uncertainty relative to his rights to share in the bonuses, delay rentals and royalties from such leases and in place thereof substituted fixed and determinable rights, powers and authority in such regard. There can be no question but that in the case at bar the Family Agreement reduced uncertainties to certainties and removed all doubt concerning the respective rights and positions of the usufructuary and naked owners. In return for granting the usufructuary the sole and exclusive right to execute such leases and assigning the entire bonuses and delay rentals derived therefrom to said usufructuary, defendants acquired decedent's undivided half interest in the several tracts involved herein. Such mutual exchange of things of value removes said transaction from the classification of a simulated act.
The Family Agreement having been determined to be a conveyance wherein consideration was paid for the property transferred therein is not subject to attack on the ground of simulation.
Plaintiff having alternatively attacked said agreement on the ground that it allegedly constituted a donation in disguise bore the burden of proving that the price paid for the property therein transferred was below one-fourth its real value at the time of said conveyance. LSA-C.C. Article 2444. This plaintiff has failed to do. The record is devoid of evidence tending to establish either the value of the property or the mineral rights therein on the date of the Family Agreement.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed.
Affirmed.