91 So.2d 120 (1956)
Joseph CAMUS et al.
v.
Daniel CAMUS.
No. 20869.
Court of Appeal of Louisiana, Orleans.
December 10, 1956.
Rehearing Denied January 2, 1957.
Writ of Certiorari Denied February 27, 1957.
George O'Dowd, New Orleans, for plaintiffs and appellants.
Andrew H. Thalheim, Gretna, for defendant and appellee.
McBRIDE, Judge.
On November 23, 1943, Lucille Mosely Percy sold to her son, Daniel Camus, three lots of ground with improvements thereon which consist of two houses, located in the Fifth District of New Orleans, and plaintiffs, the other forced heirs of Lucille Mosely Percy, who has since died, now sue Daniel Camus to have the said sale declared null and void. Plaintiffs allege in their petition that the nullity of the sale arises from the fact that the vendor reserved to herself the usufruct of the property and continued her possession after the sale; that no consideration was ever paid for the sale; and, alternatively, if there was a consideration paid, it was below one-fourth the value of the property at the time of the transfer, and that the transfer is in fact a donation omnium bonorum. The defendant denies there was no consideration or that there was a donation omnium bonorum.
The matter was tried on its merits in the court below and a judgment was rendered against plaintiffs dismissing their suit, and from this judgment they have appealed.
The act of sale under attack is in the authentic form before Andrew H. Thalheim, Notary Public, and is recorded in Conveyance Book 528 folio 222. The act makes the recital that the sale was made for the price and sum of $1,000, of which $300 was paid in cash, the receipt of which is acknowledged by the vendor, and for *121 the balance of $700, Daniel Camus gave his note, secured by mortgage on the property, payable on or before one year after date, with interest at the rate of two percent per annum from date until paid. The act contains the recital "the vendor reserving the right of usufruct."
LSA-C.C. art. 2480 provides:
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
Forced heirs are to be viewed as third persons when they are attacking an act of sale made by those from whom they inherit, on the grounds of simulation. Miller v. Arnold, La.App., 81 So.2d 181.
Under LSA-C.C. art. 2480 the placing in evidence of a certified copy of the act of sale containing the reservation of the usufruct by the vendor made out on behalf of plaintiffs a prima facie case of simulation, and it then became the burden of the defendant to prove by sufficient evidence the reality of the sale.
In Stipe v. Simon, 223 La. 542, 66 So.2d 330, 331, the Supreme Court said:
"The reservation of the usufruct and the retaining of possession of the property by a precarious title give reason to presume that the sale was a simulation. Therefore, the burden of proof was shifted to this defendant to establish the reality of the sale and to prove that she was acting in good faith. LSA-C.C. art. 2480, King v. Atkins, 33 La.Ann. 1057; Olivier's Minor Children v. Olivier, 215 La. 412, 40 So.2d 803; Succession of Combre, 217 La. 955, 47 So.2d 734. See also, Succession of Dupre, 218 La. 907, 51 So.2d 317, and Peyton v. Roth, 149 La. 147, 88 So. 773."
The defendant and his wife testified in a very general way to the payment of the $300 cash portion of the recited consideration at the time of the signing of the act of sale, but neither of them could give any specific details in connection therewith. They claimed defendant derived his income from his employment at the U. S. Naval Station in Algiers, and that he received the sum of $37 per month as an allotment from his son who was in the military service, and that he also made some money from the sale of fish which he caught after working hours. The wife states that she saved the $300 and that it was paid to her mother-in-law in the notary's office and that she was there and witnessed the passing of the money from her husband to his mother. The defendant says he gave $300 to his mother, but he does not know what she did with the money. Mr. Thalheim, the officiating notary public, had no independent recollection of the transaction, but he was sure that the consideration was paid because he always insists that there be a payment else he would not make the recital of payment in his act.
The matter of the $700 vendor's lien mortgage note also came in for some discussion. Mr. Thalheim disclaimed knowledge of what ultimately became of this note; he explained, however, that after the act was passed, he retained the note in his possession as security for the funds he intended to advance to the defendant so that defendant could pay for certain repairs which were to be made to the two houses. He went on to say that the defendant finally paid him the full amount which he had advanced for the repairs and he thereupon turned the note over to the vendor. The defendant was asked as to what became of the note and he said: "* * * it was finished paidbeen so long, got me messed up here."
Defendant's wife claimed that the note was paid "by baskets of fish and money" about January 1949 and that her mother-in-law *122 handed the note to her but she does not know whether she destroyed it or what has become of it. But she added: "We had papers fixed. She sent for Mr. Thalheim and told him it was all paid for and had him to scratch it all off."
This latter statement of the wife cannot be reconciled with what Mr. Thalheim said. He does not know what became of the note; yet defendant's wife testified that the vendor sent for him and had him to make cancellation of the mortgage inscription. It was conceded by Mr. Thalheim during argument that the mortgage on the property was still of record.
The above testimony does not impress us at all and we leave the record with the feeling that this was a sale transaction between mother and son at which no cash consideration was paid or exacted or ever contemplated and so far as the $700 mortgage note is concerned, we are convinced that the said note found its way back into the defendant's possession without his ever having paid the amount of it. The record shows that there was a close bond of affection between the mother and her son and that after the sale, just as was the case before the sale was made, the mother continued to live in one of the two houses while the son continued to live in the other house.
Furthermore, we feel sure that if any cash had been actually paid, that defendant would have been able to support his claim of payment by evidence more specific than was given by his wife and himself. They unquestionably are persons of little means and it seems logical to suppose that had they paid the $300 as they claim they did, they would have remembered more of the details concerning the payment of what to them must have been a sizable sum. We believe, also, that due to the close relationship existing between the defendant and his mother, it would only have been natural for him to have some knowledge as to what she did with the $300 if she actually had received that sum in the notary's office.
Another circumstance which raises suspicious implications as to the reality of the sale is the fact that neither of the two attesting witnesses to the act was produced nor their absence explained. One of the witnesses was Edmond Young who, the testimony shows, was the "common-law husband" of the vendor, and we are certain that if there had been an actual payment, Young would have been produced for the purpose of testifying to the fact.
Nor can we overlook the testimony of defendant's wife to the effect that the mortgage note was paid by "money and baskets of fish." We simply refuse to believe that the defendant who said he was "crazy for my mama" would have charged her for any fish he may have given her.
The defendant has not successfully borne the burden of proving the verity of the sale, and we can only conclude that it was the desire and design of the vendor to favor the defendant over her other forced heirs by transferring to him the property which was the subject matter of the questioned sale without the payment of any consideration, and that the transaction was simulated and nothing more than a donation in disguise which under our law must fall under the attack of the forced heirs.
LSA-C.C. art. 2444 reads:
"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
There are other reasons, too, why the sale must be set aside, namely, the donor retained the enjoyment of the usufruct of the immovable, and, further, she unquestionably divested herself of all of her property without reserving to herself enough for her subsistence.
*123 LSA-C.C. art. 1533 contains the following provisions:
"The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself."
And by LSA-C.C. 1497 it is provided:
"The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole."
The transaction being one reprobated by the law, it must be set aside. Stipe v. Simon, supra; Byrd v. Byrd, 230 La. 260, 88 So.2d 214; Succession of Yeates, 213 La. 541, 35 So.2d 210; Cusimano v. Ferrara, 170 La. 1044, 129 So. 630; Kelly v. Kelly, 131 La. 1024, 60 So. 671.
The cases of Joiner v. Ruark, 174 La. 615, 141 So. 76, and Blackman v. Brown, 155 La. 959, 99 So. 711, cited by appellee, differ from a factual standpoint from the instant case and have no application here.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs and against the defendant annulling, avoiding and setting aside the sale dated November 23, 1943, passed before Andrew H. Thalheim, Notary Public, registered in C.O.B. 528 folio 222, wherein Lucille Mosely Percy transferred to Daniel Camus the following described property, to wit:
"Three certain lots of ground, together with all the buildings and improvements thereon, situated in the Fifth District of the City of New Orleans, in what is known as the Streuby Subdivision, in Block bounded by Lawrence, Odeon and Bringier Streets, and the line of the Hinds Estate, said lots designated by the Numbers 1, 2 and 3 adjoin each other; lot 1 forming the corner of Lawrence and Odeon Street and measuring 30 feet front on Lawrence Street, by a depth and front of 121 feet, 10 inches on Odeon Street; Lots 2 and 3 measure each 30 feet front on Lawrence Street by a depth of 121 feet-10 inches, between parallel lines."
Defendant is to pay the costs of both courts.
Reversed.