REID, Judge.
This is a suit brought by eight of the forced heirs of W. J. Crain and Julia Warner Crain against two other forced heirs seeking to annul and set aside as simulations and donations in disguise two certain sales made by W. J. Crain and Julia Warner Crain to the defendants. After trial on the merits the Court rendered judgment in favor of the defendants W. Edmond Crain and J. Berkley Crain, dismissing plaintiffs’ suit at their cost. It is from that judgment this appeal has been taken.
The facts show that on February 18, 1953 W. J. Crain and his wife Julia Warner Crain executed two private acts of sale to W. Edmond Crain and J. Berkley Crain, respectively, for a recited consideration of $3000.00 represented by one promissory note for said amount. In each deed the vendors retained a life usufruct of the property conveyed. The property conveyed was all of the property owned by vendors. The two deeds were not recorded until after the death of the father, on or about October 12, 1962. The mother had died in 1957. The facts further show that after the deeds were executed they were placed in W. Edmond Crain’s lock box and the two notes were placed in W. J. Crain’s lock box, to which his son Jesse D. Crain had access. The record shows no payments were made on the principal of the two promissory notes until after the death of W. J. Crain, at which time each of the defendants gave his check in the amount of $3000.00 in payment of said notes representing the purchase price. The checks were given to Jesse D. Crain, the unofficial administrator of his father’s estate, who then proceeded to pay certain of the heirs for their pro rata share, including the defendants themselves who received the sum of $516.00 as their share of the so-called purchase price. Both notes were filed in evidence and show credits for interest at various intervals, which interest the defendants said was paid not by cash but by services.
The testimony shows the father and mother retained possession of the property until the death of the mother, Julia Warner Crain, in 1957 and then W. J. Crain remained in actual physical possession of the property until one year prior to his death when he moved to the home of one of his children. From 1953 until 1962 W. J. Crain signed the homestead exemption on the property each year and continued to use the land and raise cows and chickens.
The defendant William Edmond Crain testified he received 125 acres of land and admitted he put the deed in the lock box and filed it of record only after his father’s death in October of 1962. The record shows that in 1945 William Edmond Crain had purchased an adjoining 14.44 acres from his father for $1000.00 or $69.25 per acre-compared to 125 acres for $3000.00 shown as the consideration for the sale under attack herein. Edmond Crain admitted his father and mother lived on the land until the mother died and the father continued to live there until shortly before his death and that each year he took his father to the courthouse to sign his homestead exemption. He admitted he had used a portion of the land to build up a corn base with the Government and had reported to the Government he was renting a portion of the land from his father W. J. Crain. He attempted to claim he had spent as much as $5000.00 in maintaining the land, but his proof on this point was sadly lacking. In fact he introduced in evidence one receipt purportedly for money spent on the land which was dated May 5, 1953 but the printed form of receipt used clearly showed “196-” printed thereon, and Edmond Crain admitted he must have been wrong.
J. Berkley Crain, the other defendant, testified he received 35 acres known as the home place and an additional 27 acres. He *667 corroborated the testimony of his brother Edmond as to possession and signing of the homestead exemption. He also admitted the credits shown as payment of interest were not paid in cash and alleged the same represented services to his father.
Lennie Rae Crain Seal, a granddaughter of W. J. Crain, testified she had heard her grandfather say the property was his land.
Harvey Crain, one of the plaintiffs, testified his father lived on the land until one year before he died, that at all times he maintained the property was his and when asked shortly after his mother’s death if he had transferred the property, his father had said he had not.
Della Crain Tynes, who lived near her father, testified that her father had never told her he had sold his land to Edmond or Berkley and in fact had himself farmed the land even though he was 90 years of age and had even helped the defendants with their crops. She testified that Jesse D. Crain, the unofficial administrator, had not offered to pay her her share of the purchase price.
Victor J. Crain testified he had asked his father shortly after his mother’s death whether or not he had transferred the property and his father had denied doing so, but had said wills were made under which the property was to go to the defendants and they were to pay the other children for their share of the property. He further testified:
“A: Yes sir, and I asked him about— at mother’s point of death we were all there for a whole week and I live in Baton Rouge and stay in Baton Rouge and tend to my own business and know nothing about what happens over here in Washington Parish was the reason I wanted to see my father about it and he said, well — he broke down and went to crying and he said ‘I wish I hadn’t signed it, I wished I hadn’t had nothing to do with it’ and I said ‘go tear the thing up is what I would do’ and he says ‘I can’t, mother’s name is on the will.’ ”
The claim of the plaintiffs that W. J. Crain treated this as a will was certified by Charles Norman Crain, a grandson, who stated his grandfather had told him he made a will, that the defendants were to get the land and were to pay the other children out of the proceeds and that the grandson’s share would be about $600.00.
Jesse D. Crain, who acted as the unofficial administrator, testified on cross examination that his father had deeded the land to his two brothers because that was the way his father “wanted it done because he knew that a will was no good in Louisiana” and “that was his way of leaving his property to his two sons Berkley and Edmond.” This testimony by Jesse D. Crain is important, insofar as showing that actually what W. J. Crain intended to do was to use this method to evade the laws on forced heirship in Louisiana, because he is not a party at interest in the said suit.
The Trial Judge said the facts did not reflect the deeds were simulations because the consideration had been paid after the death of W. J. Crain and because W. J. Crain had discussed the matter with several of his children and “he gave deeds to the defendants herein because he wanted them to have the property, and it was he who fixed the conditions of the sale insofar as payment is concerned.” He further held that the consideration paid for the property could not be considered less than one quarter of the actual value because the plaintiffs’ expert witness “offered no sales of comparable property to bolster his opinion” and the defendants had offered sales indicating a fair price.
It is difficult to see how the Trial Judge reached the conclusion he did. There is no question but what the sales were simulated. The facts as admitted by the defendants clearly show that what the defendants’ father wanted to do was to avoid the Louisiana laws on forced heirship. The *668 record is clear that W. J. Crain retained possession of the property, that he treated it as if it was his own, and that he was merely trying to favor two of his children over the balance of his forced heirs.
The law and the jurisprudence pertaining to this matter are both well settled. LSA-C.C. Art. 2480 provides:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
The Courts of Louisiana have repeatedly held that forced heirs “are to be viewed as third persons when they are attacking an act of sale made by those from whom they inherit, on the grounds of simulation.” Camus v. Camus, La.App., 91 So.2d 120.
The facts certainly do not show the defendants were in good faith. The deeds were placed in a lock box and the plaintiffs were not informed of the sales. The plaintiffs and the other forced heirs would have come into ownership of an undivided one-half interest in the property at the time of the death of Julia Warner Crain and the actions on the part of the defendants in attempting to pay the recited considerations after the death of W. J. Crain, their father, does not bring this case out from under the rule above cited.
There is no question but what the purported sales were in fact donations in disguise, which necessarily are null because not in the form required by law.
There are other reasons, too, why the sales must be set aside They are in violation of LSA-C.C. Art. 1533 which provides:
“The donor is permitted to dispose, for thé advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself.”
and also in violation of LSA-C.C. Art. 1497 which provides:
“The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
The effect of the Trial Court’s opinion, which this Court feels would carry out the intent of the said W. J. Crain, is to give the defendants the land and at the same time compensate the other heirs by giving them their pro rata share of the so-called purchase price in cash. It must be pointed out that the defendants not only got the land but also received their share of the purchase price and in effect the Trial Court is stating that this can be done in a manner not permitted by our law. It is clear that Mr. Crain was well aware of the fact that he could not accomplish this by will and he therefore used this method to circumvent the laws of forced heirship in direct violation of the Constitutional provi-sions of Section 16 of Article 4 of the Louisiana Constitution, L.S.A. In this regard we feel that the ruling of this Court in the case of Succession of Delaune, La.App., 138 So.2d 41, at page 49, is appropriate:
“A gratuitous disposition is strictly controlled under the law of this state, both in substance and form. It may be accomplished only by donation inter vivos or mortis causa. LSA-C.C. Article 1467. The inter vivos donor must divest himself presently and irrevocably of the subject matter of the donation in favor of the object of his beneficence. A gift during life, in expectation of death, which is not to take effect until after the death of the donor is a donation causa mortis reprobated by the law of this state. LSA-C.C. Ar *669 ticle 1469; Succession of Sinnott v. Hibernia Nat. Bank, 105 La. 705, 30 So. 233. Attempts to circumvent the stringent legal requirements surrounding donations inter vivos and mortis causa by means of simulated sales wherein the usufruct of the property involved is reserved unto the donor have frequently been annulled. For example see Succession of Yeates, 213 La. 541, 35 So.2d 210. In view of the circumstances shown the burden of proving the validity of the sales rested upon defendants in these proceedings.”
We are aware of the fact that one factor distinguishing the present case from the cases cited is the fact that there was an attempt to pay the consideration after the death of the donor. However, we feel that this was just another clever method to attempt to get around the rules set forth above.
We would like to point out that the case of Kinney v. Kinney, La.App., 150 So.2d 671, cited by the plaintiffs and by the Trial Judge, is not pertinent to this matter as in that case no reservation of the usufruct was made in the sale under attack. The evidence showed the consideration had been paid and there was nothing in the record to indicate the deeds were not placed of record. There was not an attempt on the part of the parties to the sale to hide from the other forced heirs the circumstances surrounding the transaction.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs and against the defendants annulling, avoiding and setting aside the sale from W. J. Crain and Mrs. Julia Warner Crain to J. Berkley Crain dated February 18, 1953, covering 35 acres and 27 acres in Section 37, T 1 S, R 12 E, Washington Parish, Louisiana recorded in Conveyance Book 176, page 293 and also the sale from W. J. Crain and Mrs. Julia Warner Crain to W. Edmond Crain dated February 18, 1953, covering 125 acres in Section 37, T 1 S R 12 E, Washington Parish, Louisiana, recorded in Conveyance Book 176, page 292 of the records of said Parish.
Defendants are to pay all costs of court.
Reversed.