218 So.2d 83 (1969)
SUCCESSION OF Samuel Floyd ELROD, Nancy Anah Elrod, wife of Buddy F. Wright, and Bill Gordon Elrod
v.
Ercilia ELROD, divorced wife of Yves Joseph LeNY and Mrs. Geraldine Anita de la Parra, widow of Samuel Floyd Elrod.
No. 3218.
Court of Appeal of Louisiana, Fourth Circuit.
January 6, 1969.
*84 Graham & Graham, Louis B. Graham, J. B. Kiefer, New Orleans, for plaintiffs-appellants.
Butler, Reeves & McCay, Perrin C. Butler, New Orleans, for Mrs. Geraldine Anita de la Parra Elrod, defendant-appellant.
*85 Maurice B. Friedman, New Orleans, Eugene P. Cerise, Metairie, for Ercilia Elrod LeNy, defendant-appellee.
Before REGAN, YARRUT and BARNETTE, JJ.
BARNETTE, Judge.
This suit was brought by two grandchildren, as forced heirs of their grandfather by his first marriage, and joined as a co-plaintiff with them was the administratrix of the grandfather's succession. They seek to have certain property, acquired during the second marriage, decreed to be community property. Secondly, they seek the annulment on account of simulation of two certain purported acts of sale in which their grandfather joined his second wife, as vendor, in conveying the property in question to a daughter of the second marriage in an alleged attempt to deprive them of their potential inheritance. Alternatively they seek to have the purported acts of sale decreed to be donations in disguise. They named as defendants in the case the second wife, who survived the deceased, and the daughter of that marriage, the alleged vendee of the property in question. The trial court rejected the claimed separate and paraphernal ownership of the wife and decreed the property to be community. It rejected the plaintiffs' contention of simulation but sustained the alternative prayer and held that the purported sales by the father and mother to their daughter were disguised donations and ordered her to collate the properties in a partition to be made thereafter.
The plaintiffs and the defendant widow of the deceased have appealed. The limitations and objectives of their respective appeals are discussed below.
Samuel Floyd Elrod was married twice, first to Gertrude May Kurtz, from whom he was divorced. A son, Gordon F. Elrod, was born of this marriage and predeceased his father. The second wife was Geraldine Anita de la Parra, one of the defendants in this case. The defendant Ercilia Elrod LeNy, a daughter, was the only child born of the second marriage.
On June 2, 1962, Gordon F. Elrod died and is survived by the plaintiffs Bill Gordon Elrod and Mrs. Anah Elrod Wright, the only two children of Gordon F. Elrod. They represent their father in the succession of their grandfather, Samuel Floyd Elrod.
During the marriage of Samuel Floyd Elrod and his second wife, certain properties were acquired in New Orleans at 4212-14 St. Charles Avenue and at 4725 Carondelet Street. The acts of sale of both properties declared the vendee to be Mrs. Geraldine Anita de la Parra, wife of Samuel F. Elrod. Both acts contained a statement by Samuel F. Elrod declaring the property was purchased with his wife's separate and paraphernal funds and that he had no interest in the property whatsoever.
By act of sale dated July 8, 1959, the St. Charles Avenue property was sold by Mrs. Elrod to her daughter for a recited consideration of $45,500, on terms of $6,234.66 in cash, and the balance by the assumption of a mortgage. On July 17, 1959, the Carondelet Street property was sold to Mrs. LeNy for a recited consideration of $30,000, on terms of $17,036.18 cash, and assumption of a mortgage for the balance.
The acts in question were passed before Bernard Oppenheim, notary public. Mr. Oppenheim did not testify at the trial, but a stipulation was agreed to by all parties that if Mr. Oppenheim had testified, he would have stated in effect that the acts were not passed before him at his office and in the presence of the two attesting witnesses; that the signature of Samuel Floyd Elrod was not taken at his office nor in the presence of the witnesses; that he did not handle any funds by and between the purported vendors and vendees and did not witness any distribution of such funds; and that during the spring or summer months of 1964 he prepared a counter-letter for Mrs. Elrod which was to have *86 been signed by Mrs. LeNy, but it was never signed as intended. It stated, in effect, that Mrs. LeNy had not in fact any interest in the described properties, but that titles to the properties were taken and placed in her name for convenience only.
Plaintiffs contend that the purported sales were pure simulations and conveyed nothing. They contend that notwithstanding the apparent authentic acts translative of title, neither the purchase price nor any part of same was ever paid and that the purported sales were intended to be only sham transactions to fraudulently deprive them of their legitime.
It should be pointed out that in answer to plaintiffs' petition, the defendant Mrs. Geraldine Anita de la Parra Elrod categorically admitted every essential allegation and concluded with a prayer for the same judgment primarily sought by plaintiffs. In effect, this defendant seeks to align herself with the plaintiffs against her daughter and co-defendant. We recognize immediately the questions which this posture raises, particularly in view of Mrs. Elrod's prior unsuccessful attempt to accomplish directly that which she now seeks to achieve indirectly. The object of the judgment which plaintiffs in this suit now seek is the same thing demanded and on the same cause of action as that sought by Mrs. Elrod against Mrs. LeNy in a prior suit; see Elrod v. LeNy, La.App., 193 So.2d 299 (1966).
In that case we affirmed the summary judgment in favor of Mrs. LeNy dismissing Mrs. Elrod's suit against her. We held that Mrs. Elrod could not be heard to controvert her own authentic act by an attempt to show a lack of consideration in the absence of allegations of fraud, mutual error or force, or where written evidence in the nature of a counter-letter is available, or the lack of consideration is indicated by admissions of fact or in answer to interrogatories. Neither of those conditions was alleged nor indicated in that case, and no parol evidence could therefore be entertained against the acts under attack, which were authentic on their face. LSA-C.C. art. 2276. We therefore held that summary judgment in favor of the defendant Mrs. LeNy dismissing Mrs. Elrod's suit against her was proper.
Obviously the judgment in that case can in no manner affect the rights of these plaintiffs to assert their claims to the property in question as the forced heirs of their grandfather, and the plea of res judicata filed by the defendant LeNy was properly overruled. There were no cross pleadings or issues joined between the parties except as contained in the petition and answers. Mrs. LeNy's answer was a simple denial of the facts alleged. Reference in the reasons for judgment and in the judgment to a reconventional demand by Mrs. Elrod are therefore improper and probably inadvertent.
The plaintiffs apparently limited their appeal to that part of the judgment which held the conveyances to Mrs. LeNy to be donations in disguise rather than pure simulations, and hence nullities. Obviously they would have no interest in appealing the judgment in their favor upholding their contention that the property was community rather than paraphernal.
Mrs. LeNy's interest would be best served by a judgment holding the property to be separate and paraphernal. She therefore would have an interest in appealing from that part of the judgment decreeing it to be community because of the reduction of her ownership through collation, which the judgment required of her. But Mrs. LeNy has not appealed nor answered the appeal. She is apparently content to rest on the judgment holding the property to be community and conveyed to her as a donation in disguise, since the act of conveyance purports to have been by both her father and mother.
Theoretically, Mrs. Elrod would have an interest in appealing from that part of the judgment which decrees the property to be community. Her motion for appeal is not *87 limited and her appeal brings this issue to this court. Therefore, except for the appeal by Mrs. Elrod, we might treat this issue to have been finally adjudged. But having reached this court, Mrs. Elrod now makes no issue of this question. Instead, she joins the plaintiffs in seeking an affirmance of that part of the judgment. In spite of this change of posture and the practical abandonment of the issue of community property, we nevertheless find that it must be clearly resolved. In briefs and in argument before this court, counsel for Mrs. Elrod has attempted alternatively to raise the issue of nullity of donation on a plea of omnium bonorum, in violation of the prohibition imposed by LSA-C.C. art. 1497.
The law is well settled to the effect that property acquired during the existence of the community is presumed to be community property. LSA-C.C. arts. 2334, 2402, 2405. The burden of overcoming this presumption rests upon the party asserting the separate and paraphernal nature of the property. To overcome this heavy burden, proof must be clear, positive, and of a legally certain nature that the property was acquired with separate and paraphernal funds. It is also well settled that declarations of paraphernality by the husband are immaterial. The presumption that the funds are of the community still has to be overcome. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Franek, 224 La. 747, 70 So.2d 670 (1953); Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Succession of Winsey, 170 So.2d 732, La.App. 1st Cir. (1964).
Mrs. Elrod, over the objection of counsel for Mrs. LeNy, was permitted to testify that the property in question was in fact acquired with community funds, and the declarations to the contrary were false. As between her and the plaintiffs, this admission against interest was admissible. As between her and her daughter, in view of the possibility that under certain contingencies it could be against the daughter's interest and in contravention of her own written instrument, this testimony was probably not admissible under the parol evidence rule. But these plaintiffs, in whose behalf the testimony is admissible, should not be denied its benefit. Its probative value, however, should be considered in the light of prevailing circumstances.
In an attempt to overcome this testimony and the legal presumption in favor of the community, Mrs. LeNy attempted to show that her mother did have sufficient funds available to purchase the property paraphernally. She pointed to certain business transactions and the sale by her mother, after her marriage to Mr. Elrod, of certain property acquired before their marriage. She also pointed to her father's declarations of paraphernality both in the purchase of the properties and their purported sales.
All the evidence considered we must hold, as did the trial judge, that the two properties acquired during the marriage of Samuel F. Elrod and Geraldine Anita de la Parra Elrod were acquired as community property, notwithstanding the declaration of paraphernality to the contrary. This, we think, is so clearly established as to admit of little or no doubt.
In actions to determine whether or not a purported sale by a parent to his child is a simulated transfer, or a disguised donation, the following articles of the Civil Code are applicable:
Article 2239: "Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime]."
Article 2444: "The sales of immovable property made by parents to their children, may be attacked by the forced heirs as containing a donation in disguise, if *88 the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
Article 2480: "In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
The jurisprudence is replete with decisions interpreting these articles to mean that forced heirs are to be viewed as third persons when they are attacking an act of sale made by those from whom they inherit, on the ground of simulation. Crain v. Crain, 175 So.2d 665, La.App. 1st Cir. (1965); Camus v. Camus, 91 So.2d 120, La. App. Orleans (1956); Miller v. Arnold, 81 So.2d 181, La.App. 1st Cir. (1955).
In interpreting article 2480, the jurisprudence is also well settled to the effect that a presumption of simulation is established in all cases where the thing sold remains in the possession of the seller, and the burden of proof is thereby shifted to the parties to show that they were in good faith and that such transactions were genuine. In the instant case, Mr. and Mrs. Elrod remained in the possession of the property. They continued to live on the premises, collect all rents, and pay all taxes and debts for which no accounting was required. In light of such circumstances, article 2480 is applicable and the burden is shifted to the defendants to show the sales were valid. Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960); Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955); Joyner v. Batchelor, 206 So.2d 744, La.App. 2d Cir. (1968); Dare v. Myrick, 168 So.2d 845, La. App. 2d Cir. (1964).
To establish the validity of the sales, Mrs. LeNy testified in some detail and offered some evidence in an attempt to show that she was of independent means to purchase the property. She admitted that she received no funds of any consequence from either of her two divorced husbands. The second divorce was in 1951 and she admitted that she had not been employed at any time before the purported purchase of the property in 1959. She testified that the source of her funds was an alleged wealthy Colombian coffee planter and diplomat in New York, to whom she was "engaged" and expected to marry when he could obtain a divorce from his wife.
She testified that each month he gave her large sums of money, sometimes totalling as much as $4,000; that he bought her expensive clothes and jewels; and that he had bought her a farm in New Jersey. She further testified that she owned a five-story elevated town house in New York City, also a gift from her Colombian benefactor. They came to a parting of the ways in 1963. An attempt to obtain his testimony by answer to interrogatories submitted by the plaintiffs was met with a plea of diplomatic immunity.
In support of their charge of simulation, plaintiffs offered the testimony of Mrs. Elrod. She could not be heard to contradict by parol evidence her authentic acts of sale, between herself as vendor and her daughter as vendee, and such testimony as to the issue of simulation between them would not be admissible. Furthermore, she would be estopped by res judicata as to her daughter, Elrod v. LeNy, supra. However, her testimony on this issue is available to the plaintiffs. LSA-C.C. art. 2239.
Mrs. Elrod testified that no sale was ever intended; that the whole scheme was designed as one of convenience. The property was to be reconveyed to her at the proper time. She testified that she had a sum of moneythe actual amount of which was not definitely determinedin a safety deposit box in a local bank to keep her husband from knowing just what she had. Both Mrs. Elrod and her daughter Mrs. *89 LeNy had access to the safety deposit box without either accounting to the other.
She testified how the money taken from the safety deposit box was "switched" back and forth to a checking account in Mrs. LeNy's name so checks could be drawn by Mrs. LeNy for payment of the purchase price.
A promissory note for $7,036.18 was given by Mrs. LeNy in part payment, payable to herself and endorsed in blank. This note was allegedly kept in the same safety deposit box to which Mrs. LeNy had access without accounting.
Mrs. Elrod testified that the funds used in the transaction were her own and that she has never received any money from her daughter. She testified that the sole intent of the purported transactions was an attempt to place the property outside the community of acquets and gains existing between herself and her husband.
When questioned about her mother's testimony, Mrs. LeNy gave vague and incredible answers concerning the various checks and monies allegedly used in the transactions. She steadfastly claimed that large sums of money were available in the safety deposit box. The explanation she offered for allowing her mother and father to remain in possession of the property, and from all appearances act as owners, was that she engaged her mother as manager of the property which consisted of rental apartments. This Mrs. Elrod emphatically denied.
We have no doubt that Mrs. Elrod had a sum of money in a safety deposit box not much in excess of $6,000 representing savings probably accumulated, at least in part, from rentals of the community property. This money was used to make deposits to cover checks as and when necessary to give the simulated sales the appearance of validity. All of this we conclude was in furtherance of a scheme between Mrs. Elrod and Mrs. LeNy to place the property beyond the reach of Mr. Elrod's heirs by his first marriage. Except for the personal conflict which later arose between Mrs. Elrod and her daughter and the daughter's refusal to reconvey the property to her mother, the truth of these facts might never have been revealed.
There is nothing in the record before us which supports the conclusion that the purported sales to Mrs. LeNy were donations in disguise. All the evidence clearly preponderates in support of the conclusion that there was no intention whatever between the parties that the properties be conveyed to Mrs. LeNy. The purported sales were pure simulations, null and void.
In view of our opinion that the purported sales were pure simulations and conveyed nothing to the purported vendee, Mrs. LeNy, it is not necessary to discuss the question raised alternatively in this court by the appellant Mrs. Elrod.
It is not the purpose of this opinion to resolve the issues which may conceivably remain unsettled between Mrs. Elrod and her daughter Mrs. LeNy, and it shall not be construed as precluding any right of action that either may have against the other on any aspect of this case not expressly settled by this opinion and decree.
The judgment appealed from is affirmed insofar as the following described property is decreed to have been acquired by and to belong to the community of acquets and gains existing between Samuel Floyd Elrod and his wife, Geraldine Anita de la Parra Elrod:
"A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining, situated in the Sixth District of the City of New Orleans, State of Louisiana, in Square No. 386, Bouligny, bounded by General Pershing, Pitt, Milan Streets and St. Charles Avenue, designated as Lot 9-A on a blue print of survey *90 of Adloe Orr, Jr. & Associates, C.E., dated September 19, 1957, according to which said portion of ground commences at a distance of one hundred (100') feet from the corner of Milan Street and St. Charles Avenue and measures fifty (50') feet front on St. Charles Avenue, same width in the rear by a depth of one hundred (100') feet between equal and parallel lines.
"The real estate hereinabove described fronting on St. Charles Avenue in the City of New Orleans and having been aquired by Mrs. Geraldine Anita de la Parra, wife of Samuel F. Elrod, by act before Alcide Weysham dated May 15, 1956, registered in COB 608, folio 175.
"A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Sixth District of the City of New Orleans, in Square No. 440, Bouligny, bounded by Carondelet, Valance, Baronne, and Bordeaux Streets and according to a survey by Gilbert & Kelly, Surveyors, dated November 30, 1946, attached to an act of Frank Macheca, late Notary Public, dated December 10, 1946, the lot is designated by the No. 9-B and commences at a distance of ninety-seven feet, six inches, no lines (97' 6"0"') from the corner of Carondelet and Bordeaux Streets and measures thence fifty-two feet, six inches (52' 6") front on Carondelet Street by a depth between equal and parallel lines of one hundred fifty-four feet (154') and is composed of all of original Lot 9 and is part of original Lot 10. The improvements are designated by the Municipal No. 4723-25 Carondelet Street.
"The real estate hereinabove described fronting on Carondelet Street in the City of New Orleans acquired by Mrs. Geraldine A. de la Parra, wife of Samuel F. Elrod from Acme Homestead Association by act before H. E. McEnerny, Notary Public, dated July 8, 1926, by act of credit sale, registered in COB 410, folio 518."
The judgment insofar as it decreed the two purported acts of conveyance to the defendant Ercilia Elrod, divorced wife of Yves Joseph LeNy, to be donations in disguise by Geraldine Anita de la Parra, wife of and Samuel Floyd Elrod and ordering collation, is annulled and set aside.
It is further ordered, adjudged and decreed that the two purported sales of said properties by Geraldine Anita de la Parra, wife of and Samuel Floyd Elrod, before B. K. Oppenheim, Notary Public, dated and registered respectively July 8, 1959, registered July 28, 1959 in C.O.B. 628, folio 293 and July 17, 1959 registered July 28, 1959 in C.O.B. 629, folio 245, to be simulations, null and void.
It is further ordered, adjudged and decreed that said described property be brought back into the succession of the decedent, Samuel Floyd Elrod, for administration and distribution among his heirs in the manner and proportion according to law.
The defendants are cast for all costs.
Affirmed in part; annulled in part and judgment rendered.