311 So.2d 67 (1975)
Succession of Mrs. Nannie Mae SIMPSON.
No. 12577.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1975.
Rehearing Denied May 1, 1975.
Writ Refused June 20, 1975.
*68 Herold & Geneux by Simon Herold, Shreveport, for appellants.
Meadors & Meadors by George H. Meadors, Homer, for appellees.
Before AYRES, HALL and DENNIS, JJ.
En Banc. Rehearing Denied May 1, 1975.
AYRES, Judge.
Plaintiffs, Alvin W. Simpson, individually and as testamentary executor, Mrs. Bessie Elaine Perritt, James Harold Simpson, Bobby Joe Simpson, Mrs. Alverne S. Rast, Mrs. Doris Mae Miller, Mrs. Barbara Sue Cady, and Mrs. Marilyn V. Wagnon, eight of twelve children of the decedent, Mrs. Nannie Mae Simpson, and recipients of certain inter vivos transfers of property owned by the decedent, filed a petition seeking a declaratory judgment sustaining these transactions. They also sought authority to effect a compromise and an approval of an application for a private sale of immovable property. The executor submitted for approval an annual account.
Made defendants were three other children of the decedent, Ben T. Simpson and Wayne L. Simpson, who were excluded from the transfers, and Frederick B. Simpson, a recipient of a similar interest in the transferred property who had expressed that he felt all the children of Mrs. Simpson should be treated equally in the distribution of the assets of their mother's succession. Defendants prayed that plaintiffs' demands be rejected, there be judgment in *69 their favor decreeing all the documents and proceedings sought by plaintiffs to be validated to be invalid, null and void. They also sought an inventory and accounting of all the property of their mother's succession.
Judgment was rendered and signed on June 11, 1974, in favor of plaintiffs and against defendants decreeing the legality and validity of the documents of transfer. Over the opposition of defendants, separate judgments were also rendered approving the first annual accounting and dismissing a "Motion to Traverse Sworn DescriptiveLists" or inventory of the property. Defendants perfected an appeal from these judgments.
In brief, defendants argue that the trial judge erred in denying and dismissing their "Motion to Remove the Executor." Judgment was rendered in this matter on August 25, 1972, and signed three days later on August 28. The Louisiana Code of Civil Procedure in Article 2974 provides that the rules applicable to appeals in ordinary proceedings govern judgments confirming or removing a succession representative, except that they shall be executed provisionally, notwithstanding appeal. The judgment is therefore final and not before this court since no motion for an order of appeal was taken until June 11, 1974, nor perfected by the filing of an appeal bound until June 26, 1974, and, therefore, not within the delays prescribed by law.
In 1968, Fred W. Simpson died and a judgment of possession was rendered placing Mrs. Nannie Mae Simpson, his widow, in possession of one-half the community property and their twelve children in possession of the other half subject to the usufruct of Mrs. Simpson. On May 6, 1972, Mrs. Simpson died testate, naming Alvin W. Simpson as executor and bequeathing all her property to all of her children equally except that her son Calvin C. Simpson was to get only his legitime, since he had received an extra portion from his father's estate. A settlement was reached with Calvin, and he is therefore not a party to this suit. There is no dispute as to the validity of Mrs. Simpson's statutory will.
In 1969, Mrs. Simpson made two donations of property, one being a donation in trust of virtually her entire estate. Later, by a series of transactions in the form of either donation, deed or option, the trustee purportedly transferred a substantial part of the trust property to nine of her twelve children, excluding Ben, Wayne, and Calvin. Plaintiffs' petition sought a declaratory judgment recognizing the validity of these instruments. Defendants filed an answer in the nature of a reconventional demand praying that a declaratory judgment be rendered in their favor voiding all purported transfers of property and decreeing that the property involved in each transaction belongs to the succession.
The primary issue before this court, therefore, is the legality and validity of the following documents:
(1) A donation in trust of certain described movable and immovable property, dated March 3, 1969, from Mrs. Nannie Mae Simpson to Alvin W. Simpson, as trustee of the "Mrs. Nannie Mae Simpson Trust";
(2) A donation of an undivided one-half interest in two tracts of land in Claiborne Parish, Louisiana, from Alvin W. Simpson, trustee, and joined by Mrs. Nannie Mae Simpson to plaintiffs and Frederick B. Simpson, dated October 3, 1969;
(3) A donation of certain cattle from Alvin W. Simpson, trustee, and joined by Mrs. Nannie Mae Simpson to plaintiffs and Frederick B. Simpson, dated October 3, 1969;
(4) An option, dated October 3, 1969, covering certain described movable and immovable property executed by Alvin W. Simpson, trustee, and *70 joined by Mrs. Nannie Mae Simpson in favor of Alvin W. Simpson, James Harold Simpson, and Bobby Joe Simpson;
(5) A deed, dated December 18, 1970, conveying ownership of certain cattle to plaintiffs and Frederick B. Simpson executed by Alvin W. Simpson, trustee, and joined by Mrs. Nannie Mae Simpson for the stated consideration of allowing Mrs. Simpson to live in her home and to use other properties and real estate previously donated to these parties during the period from October 3, 1969, through December 18, 1970;
(6) A deed, dated December 13, 1971, conveying ownership of certain cattle to plaintiffs and Frederick B. Simpson executed by Alvin W. Simpson, trustee, for the stated consideration of allowing Mrs. Simpson the continued use and habitation of her home and other properties previously donated to these parties from December 18, 1970, through December 13, 1971;
(7) A donation of certain described immovable property, a home in Arcadia, in Bienville Parish, Louisiana, from Mrs. Nannie Mae Simpson to plaintiffs and Frederick B. Simpson, dated October 3, 1969.
The Mrs. Nannie Mae Simpson Trust was an irrevocable trust to terminate upon the death of the settlor, Mrs. Simpson, and names her as the sole beneficiary of both income and principal. There is no dispute as to the validity of the trust instrument in form or content with the exception of Article 6 of the instrument relative to the donating power of the trustee, captioned "Additional Powers," which reads as follows:

"Additional Powers
"In addition to the other powers granted to the Trustee herein, said Trustee is herewith given the right, power, and authority to make inter vivos donations of any and all property comprising the trust property, principal or income, immovable or movable, in such quantities and amounts and to such persons as the Trustee deems advisable, provided that the written consent of Settlor, Mrs. Nannie Mae Simpson, shall be required to each such donation."
Defendants object to this provision of the trust instrument on the grounds that the Louisiana Trust Code (La.R.S. 9:1721 et seq.) does not authorize a trustee to make donations. Plaintiffs contend, however, that no section of the Code prohibits a trustee from making donations and the grant of authority to make donations is valid and effective under Section 2061 of the Louisiana Trust Code which states:
"The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in this Code, and, in the absence of any provisions of the trust instrument, by the provisions of this Part and by law."
We agree that, there being no prohibition in the Code, a trustee may be given in the trust instrument the specific authority to donate.
All remaining documents in dispute, except the donation by Mrs. Simpson of her home in Arcadia, which she had not placed in trust, were executed by Alvin W. Simpson, trustee of the Mrs. Nannie Mae Simpson Trust. Mrs. Simpson joined in all transactions by the trustee with the exception of the last deed executed on December 13, 1971.
Alvin Simpson was also to be a recipient of the property under transfer in the forms of donation and deed equally with his brothers and sisters and pursuant to an option in his favor with two other brothers successively substituted for him in the event of his death before expiration of the *71 term. It is therefore necessary to determine if Alvin Simpson, as a trustee, has the authority to make donations and to execute deeds and options in his own favor, and in favor of his relatives, and to determine the extent and limitations of such power, if it exists.
Plaintiffs contend that because Mrs. Simpson consented to all of the transactions, they are legal and valid. This argument is based on Section 2063 of the Louisiana Trust Code which allows a competent beneficiary to relieve the trustee from certain duties and restrictions of administration imposed by the trust instrument or the Louisiana Trust Code. This section provides:
"By written instrument delivered to a trustee a competent beneficiary who is acting upon full information may, with respect to himself, and with the trustee's consent, relieve the trustee from duties and restrictions concerning the administration of the trust that are imposed upon the trustee by the trust instrument or by this Code, but no such instrument is effective to the extent that it purports to limit prospectively and in general terms the trustee's duty of loyalty to the beneficiary."
The trial court held that the instruments were valid in form and not prohibited by law where the settlor-beneficiary joins in the transactions evidencing full consent. In written reasons for judgment, the court concluded that there was no logical reason for preventing a settlor of a trust, who is also the sole beneficiary, from acquiescing in and permitting otherwise prohibited conveyances by the trustee if the settlor-beneficiary's written consent is obtained, thus curing any prejudice to the interests of the settlor-beneficiary.
In addition to Sections 2061 and 2063, the following sections of the Louisiana Trust Code are important in understanding the duties of the trustee and the relationship of the trustee to the beneficiary:
Section 1731:
"A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."
Section 2062:
"A provision of the trust instrument that purports to limit a trustee's duty of loyalty to the beneficiary is ineffective, except to the extent permitted by this Part."
Section 2082:
"A trustee shall administer the trust solely in the interest of the beneficiary."
Section 2083:
"A trustee in dealing with a beneficiary on the trustee's own account shall deal fairly with him and communicate to him all material facts in connection with the transaction that the trustee knows or should know."
Section 2085:
". . . An individual trustee shall not directly or indirectly buy or sell property for the trust from or to himself or his relative, employer, employee, partner, or other business associate.. . .."
Section 2091:
"A trustee is under a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property."
The purpose of a trust is the administration of property for the sole benefit of the beneficiary. The powers and duties of the trustee arising by law or under the trust instrument must all serve this end and can only be modified to the extent that they would not cause an abrogation of the purpose of the trust. Loyalty due the beneficiary by the trustee may not be dispensed with or circumvented.
*72 The trustee is a fiduciary who by the very nature of his role is in a confidential and influential position in relation to the beneficiary to whom he owes the highest loyalty. General observations in this area are found at Section 170.25 in The Law of Trusts by Austin Wakeman Scott (3d edition), which reads as follows:
"A trustee occupies a position in which the courts have fixed a very high and very strict standard for his conduct whenever his personal interest comes or may come into conflict with his duty to the beneficiaries. As long as he is not acting in his own interest the standard fixed for his behavior is only that of a reasonable degree of care and skill and caution. But when the trustee acts in him own interest in connection with the performance of his duties as trustee, the standard of behavior becomes more rigorous. In such a case his interest must yield to that of the beneficiaries. Where he deals directly with the beneficiaries, the transaction may stand, but only if the trustee makes full disclosure and takes no advantage of his position and the transaction is in all respects fair and reasonable. . . . ."
In Martinez v. Alto Employees' Trust, 273 So.2d 735, 737 (La.App., 4th Cir., 1972)writs denied, 277 So.2d 675 (La., 1973), the court had occasion to observe that when exercising his discretionary powers a trustee must act not only reasonably, but with the highest good faith towards, and loyalty to, the beneficiary and in the latter's best interest.
The trustee, being in the better position to know all the facts, must, therefore, bear the burden of proving, when he deals directly with the beneficiary on his own account or that of his relatives, that he has made a full disclosure of all material facts, that the transaction in all respects is fair and reasonable and beneficial to the trust estate, and that he has taken no advantage of his special position as a fiduciary, especially where he claims consent of the beneficiary to the transactions. In this connection, see the provisions of the Trust Code, Sections 2082 and 2083, quoted hereinabove.
Alvin Simpson, both son and trustee of the beneficiary, appears from testimony in the record to have used the influence of his dual position to obtain Mrs. Simpson's consent to these transactions. Several of the witnesses to the instruments testified that all that was done to inform Mrs. Simpson immediately before their execution was the reading aloud of the instruments by the attorney. It does not appear that all material facts were communicated to her or that she understood the consequences before affixing her mark.
In a landmark case, Michoud v. Girod, 45 U.S. 503, 4 Howard 503, 11 L.Ed. 1076, 1100 (1846), involving property in Louisiana, the United States Supreme Court held that a purchase by a trustee or an agent of particular property of which he has the sale, or in which he represents another, whether he has an interest or not, carries fraud on the face of it, and, where the beneficiary is alleged to have consented to such a sale, the opinion states:
"It is difficult to make out such a case, where the exception is taken, especially when there is any inadequacy of price, or any inequality in the bargain."
Clearly, the purported consideration in the deeds, permitting Mrs. Simpson the use of her home and other immovable property which she had allegedly previously donated to plaintiffs, is unfair and inadequate. No monetary value was attributed to this use in the deed. Mrs. Simpson continued to live in her home and never relinquished possession. It is therefore inconceivable that there was any advantage or benefit to the beneficiary, Mrs. Simpson, in these deeds.
The option agreement, with a stated term of ten years and an option price of $50 covering nearly all the property remaining in the trust whose values were *73 stated therein, would also be inadequate and unfair according to testimony in the record.
We cannot find otherwise but that plaintiffs have failed to meet the burden of proof arising out of the circumstances and relationships herein, and therefore all transfers made by the various documents executed by Alvin W. Simpson should be declared null and void and held to be assets to be included in the succession of Mrs. Nannie Mae Simpson.
Mrs. Simpson purchased the home in Arcadia, Louisiana, soon after the death of her husband. This property was not included in the trust which she established on March 3, 1969. On October 3, 1969, she executed an act of donation before a notary public and two witnesses, apparently giving this property to plaintiffs and Frederick Simpson. Some of the donees signified their acceptance in the act of donations and others subsequently accepted the donation in writing before a notary public and two witnesses. The act of donation and all acceptances were recorded in Bienville Parish, Louisiana.
Where an authentic act is required in order to donate, the intent of the donor to give can be inferred from the donor's execution of such an act. Succession of Brewster, 259 So.2d 388 (La.App., 2d Cir., 1972). After careful examination of the record, however, we conclude that although Mrs. Simpson may have had the intent to donate, she did not intend to divest herself of her home until her death.
Louisiana law recognizes only two forms of acquiring or disposing gratuitously of propertydonations inter vivos and donations mortis causa. LSA-C.C. Art. 1467.
Article 1468 of the Louisiana Civil Code defines a donation inter vivos as follows:
"A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it." (Emphasis supplied.)
A letter written by Mrs. Simpson addressed to all of her children clearly indicates that she executed the donations of the described immovable property in Claiborne and Bienville Parishes and the option agreement purely to punish Ben and Wayne Simpson by excluding them for their lack of cooperation with her and the remainder of their brothers and sisters. The alleged lack of cooperation consisted primarily of Ben's and Wayne's reluctance to sell the property and their refusal to execute a power of attorney to Alvin Simpson giving him full control and management. The testimony and evidence were to the effect that Mrs. Simpson remained in possessionin fact, never gave up possession of her home in Arcadia.
For the above reasons, we find that Mrs. Simpson did not intend to divest herself of the property until her death, and therefore this donation cannot be considered a donation inter vivos. Nor can it be considered a donation mortis causa, a gift to take place when the donor no longer exists, since any form other than a last will or testament is abrogated. LSA-C.C. Arts. 1469, 1570. In this regard, it may be pointed out that the purported donation does not contain testamentary language or the formalities required for a will. LSA-C.C. Art. 1570 et seq. and LSA-R.S. 9:2442 et seq.
A gift during the life of the donor, not to take effect until after death of the donor and not in proper form for donation mortis causa, is a donation causa mortis reprobated by the law of this State. Succession of Delaune, 138 So.2d 41, 49 (La. App., 1st Cir., 1962cert. denied, 1962); Crain v. Crain, 175 So.2d 665, 668 (La. App., 1st Cir., 1965).
The alleged donation by Mrs. Simpson of the family home should be declared null and void and the subject property returned to her succession.
*74 For the reasons assigned, the judgments appealed are therefore annulled, avoided, reversed, and set aside.
It is ordered, adjudged, and decreed there be judgment herein in favor of the defendants rejecting plaintiffs' demands and declaring all property purportedly transferred under the instruments described and referred to herein to be a part of the succession of Mrs. Nannie Mae Simpson, to be shared equally in accordance with Mrs. Simpson's will;
It is further ordered, adjudged, and decreed that the option agreement described herein is void and without effect; and
It is further ordered, adjudged, and decreed that an inventory be made and an accounting be rendered in accordance with law and pursuant to the views expressed herein.
All costs, including the cost of this appeal, are assessed against plaintiffs-appellees.
Reversed and rendered.